## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| LEAH MITELBERG, individually and on behalf of all others similarly situated,<br><br>                         Plaintiff,<br><br>    v.<br><br>STEVENS INSTITUTE OF TECHNOLOGY,<br><br>                         Defendant. | Civil Action No. 2:21-cv-01043-SDW-MAH<br><br>Hon. Susan D. Wigenton |

## PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

Dated:  April 19, 2021

**BURSOR & FISHER, P.A.**
Philip L. Fraietta
Alec M. Leslie (*pro hac vice* app. forthcoming)
888 Seventh Avenue
New York, NY 10019
Telephone: (646) 837-7150
Facsimile:  (212) 989-9163
Email:  pfraietta@bursor.com
            aleslie@bursor.com

*Attorneys for Plaintiff*

# TABLE OF CONTENTS

**PAGE(S)**

INTRODUCTION ........................................................................................... 1

BACKGROUND ............................................................................................ 5

STANDARD OF REVIEW ............................................................................ 8

ARGUMENT.................................................................................................. 8

I.      PLAINTIFF DOES NOT ALLEGE EDUCATIONAL
       MALPRACTICE ................................................................... 32

II.     PLAINTIFF STATES A CLAIM FOR BREACH OF
       CONTRACT................................................................................ 8

       A.      Plaintiff Has Sufficiently Pled A Specific Enforceable
               Promise................................................................................ 8

               1.     New Jersey Courts Recognize Implied Contracts
                       Based on University Publications .......... **Error! Bookmark not defined.**

               2.     Defendant's Disclaimer Is Too Ambiguous To
                       Affect Plaintiff's Claims ........................................... 18

               3.     Plaintiff Has Sufficiently Pled That Defendant
                       Promised An In-Person Experience And Breached
                       that Promise .............................**Error! Bookmark not defined.**

III.    PLAINTIFF STATES A CLAIM FOR UNJUST
       ENRICHMENT ........................................................................ 28

IV.    PLAINTIFF STATES A CLAIM FOR CONVERSION ............................. 30

V.      PLAINTIFF STATES A CLAIM FOR MONEY HAD AND
       RECEIVED .............................................................................. 32

VI.    PLAINTIFF MAY PURSUE CONTRACT CLAIMS..................... **ERROR! BOOKMARK NOT DEFINED.**

CONCLUSION.................................................................................... 40

i

# TABLE OF AUTHORITIES

**PAGE(S)**

## CASES

*Ansari v. New York University*,
  1997 WL 257473 (S.D.N.Y. May 16, 1997) ................................................. 10, 12

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ............................................................................................ 7

*Baldridge v. State*,
  740 N.Y.S.2d 723 (3d Dep't 2002) .................................................................... 17

*Behne v. Union County College*,
  2018 WL 566207 (D.N.J. Jan. 26, 2018 .............................................................. 22

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ............................................................................................ 7

*Beukas v. Bd. of Trustees of Farleigh Dickinson Univ.*,
  255 N.J. Super. 552 (N.J. Super. Ct. Law Div. 1991) ............................ 24, 25, 26

*Camp v. Parks*,
  314 So.2d 611 (Fla. 4th Dist. Ct. App. 1975) .................................................... 22

*Campus Assocs. L.L.C. v. Zoning Bd. of Adjustment of Twp. of Hillsborough*,
  996 A.2d 1054 (N.J. App. Div. 2010) ................................................................. 35

*Capital Health Sys. v. Veznedaroglu*,
  2017 WL 751855 (D.N.J. Feb. 27, 2017) ............................................................ 33

*Cross v. Univ. of Toledo*,
  2020 WL 4726814 (Ohio Ct. Claims July 8, 2020) .............................................. 8

*Cruz v. Seton Hall Univ.*,
  2012 U.S. Dist. LEXIS 96005 (D.N.J. July 10, 2012) ........................................ 19

*Deen v. New Sch. Univ.*,
  2007 WL 1032295 (S.D.N.Y Mar. 27, 2007) ................................................ 22, 23

*Deerhurst Estates v. Meadow Homes, Inc.*,
   64 N.J. Super. 134 (N.J. Super. Ct. App. Div. 1960)...........................................29

*Dillin v. Constr. & Turnaround Servs., LLC*,
   2015 WL 5545236 (D.N.J. Sept. 18, 2015) ..........................................................7

*Dzielak v. Whirlpool Corp.*,
   26 F. Supp. 3d 304 (D.N.J. 2014) .......................................................................30

*Finger v. Zenn*,
   762 A.2d 702 (N.J. Super. Ct. App. Div. 2000)...........................................36, 38

*Fowler v. UPMC Shadyside*,
   578 F.3d 203 (3d Cir. 2009)..................................................................................7

*George E. Warren Corporation v. Colonial Pipeline Company*,
   2017 WL 3038251 (D.N.J. July 17, 2017)...........................................................32

*Gourdine v. Felician College*,
   2006 WL 2346278 (N.J. Super. Ct. App. Div. Aug. 15, 2006) ....................24, 27

*Grossman v. Parking Authority of City of Camden*,
   2013 WL 1144830 (D.N.J. Mar. 18, 2013)..........................................................16

*Hartig Drug Company Inc. v. Senju Pharmaceutical Co. Ltd.*,
   836 F.3d 261 (3d Cir. 2016)................................................................................28

*Haverty v. Andres & Berger, P.C.*,
   2004 WL 2701040 (N.J. Super. Ct. App. Div. Nov. 9, 2004) .............................21

*In re K-Dur Antitrust Litigation*,
   338 F. Supp. 2d 517 (D.N.J. 2004) ...............................................................30, 34

*In re Knight*,
   2017 WL 4410455 (Bankr. D. Conn. Sept. 29, 2017) ........................................36

*Kel Kim Corp. v. Central Markets, Inc.*,
   70 N.Y.2d 900 (1987) .........................................................................................22

*Krebs v. Charlotte School of Law, LLC*,
   2017 WL 3880667 (W.D.N.C. Sept. 5, 2017) ....................................................14

*Longenecker-Wells v. Benecard Servs. Inc*,
658 F. App'x 659 (3d Cir. 2016) ........................................................................ 17

*Lujan v. Defenders of Wildlife*,
504 U.S. 555 (1992)........................................................................................... 38

*McDermott v. Ohio State Univ.*,
2020 Ohio Misc. LEXIS 127 (Ohio Ct. Cl. Aug. 24, 2020) ........................... 2, 26

*Mellowitz v. Ball State Univ.*,
2020 WL 5524659 (Sup. Ct. Marion Cnty. Aug. 14, 2020) ................. 2, 9, 27, 28

*Miller v. Thomas Jefferson Univ. Hosp.*,
908 F. Supp. 2d 639 (E.D. Pa. 2012) ................................................................ 17

*Mittra v. University of Medicine and Dentistry of N.J.*,
316 N.J. Super. 83 (App. Div. 1998) ............................................................ 18, 19

*Moe v. Seton Hall Univ.*,
2010 WL 1609680 (D.N.J. Apr. 20, 2010) .................................... 2, 9, 10, 16, 18

*Mucci v. Rutgers*,
2011 WL 831967 (D.N.J. Mar. 3, 2011)............................................................ 17

*Myers v. Medford Lakes Bd. of Educ.*,
199 N.J. Super. 511 (App. Div. 1985) ......................................................... 11, 12

*New York Pipeline Mechanical Contractors, LLC v. Sabema Plumbing & Heating Co., Inc.*,
2012 WL 209349 (D.N.J. Jan. 24, 2012) ........................................................... 34

*Nungesser v. Columbia Univ.*,
169 F. Supp. 3d 353 (S.D.N.Y. 2016) ............................................................... 17

*O'Brien v. Pennington School*,
2008 WL 160588 (E.D. Pa. Jan. 15, 2008).................................................. 12, 13

*Paladino v. Adelphi Univ.*,
454 N.Y.S.2d 868 (2d Dep't 1982)...................................................................... 8

*Palmeri v. LG Electronics USA, Inc.*,
2008 WL 2945985 (D.N.J. July 30, 2008).......................................................... 31

*Paynter v. New York University*,
    66 Misc.2d 92 (N.Y. App. Term 1971) ........................................................... 14, 15

*Phillips v. Cty. of Allegheny*,
    515 F.3d 224 (3d Cir. 2008) ..................................................................... 7

*Pinker v. Roche Holdings Ltd.*,
    292 F.3d 361 (3d Cir. 2002) ..................................................................... 7

*Regents University of Michigan v. Ewing*,
    474 U.S. 214 (1985) .......................................................................... 13

*Reynolds v. Palnut Co.*,
    330 N.J. Super. 162 (App. Div. 2000) ....................................................... 21

*Ricketti v. Barry*,
    2015 WL 1013547 (D.N.J. Mar. 9, 2015) ................................................... 33

*Rolph v. Hobart and William Smith Colleges*,
    271 F. Supp. 3d 386 (W.D.N.Y. 2017) ..................................................... 17

*Ross v. Creighton Univ.*,
    957 F.2d 410 (7th Cir. 1992) ................................................................. 12

*Salerno v. Florida Southern College*,
    2020 WL 5583522 (M.D. Fla. Sept. 16, 2020) ....................................... 2, 8, 27

*Skuse v. Pfizer, Inc.*,
    244 N.J. 30 (2020) ............................................................................ 23

*Smith v. The Ohio State Univ.*,
    2020 WL 5694224 (Ohio Ct. Cl. Sept. 9, 2020) ..................................... 2, 9, 27

*Swidryk v. Saint Michael's Medical Center*,
    201 N.J. Super. 601 (Law Div. 1985) ....................................................... 12

*Teamsters Indus. Employees Welfare Fund v. Rolls-Royce Motor Cars, Inc.*,
    989 F.2d 132 (3d Cir. 1993) ................................................................. 16

*Trizechahn Gateway, LLC v. Oberdick (In re Oberdick)*,
    490 B.R. 687 (Bankr. W.D. Pa. 2013) ..................................................... 36

*Troy v. Rutgers*,
   168 N.J. 354 (2001) ........................................................................ 21

*Uddin v. New York Univ.*,
   6 N.Y.S.3d 900 (N.Y. App. Term 2014)............................................ 35

*Vurimindi v. Fuqua Sch. of Bus.*,
   435 F. App'x 129 (3d Cir. 2011) ...................................................... 17

*Waitt v. Kent State Univ.*,
   2020 WL 5894543 (Ohio Ct. Cl. Sept. 28, 2020) ........................ 2, 9, 27

*Wanaque Borough Sewerage Auth. v. Twp. of W. Milford*,
   144 N.J. 564 (1996) ............................................................ 17, 31, 34

*Williams v. Board of Ed. of Paterson*,
   2017 WL 3131974 (D.N.J. July 21, 2017)........................................... 8

*Zumbrun v. Univ. of S. Cal.*,
   25 Cal. App. 3d 1 (1972) ............................................................ 35, 36

*Zahn v. Ohio Univ.*,
   2020 Ohio Misc. LEXIS 230 (Ohio Ct. Cl. Oct. 19, 2020) ........... 2, 3, 27

## STATUTES

26 U.S.C. § 152(c)(3)(A)(ii) ................................................................ 36

N.J. Stat. Ann. § 43:12-28.1 ................................................................ 36

N.J. Stat. Ann. § 43:16A-1 ................................................................. 36

N.J. Stat. Ann. § 53:5A-3 ................................................................... 36

## RULES

Fed. R. Civ. P. 8(d)(2) ....................................................................... 30

## REGULATIONS

34 C.F.R. § 668.56............................................................................. 37

34 C.F.R. § 668.57............................................................................. 37

## INTRODUCTION

This motion is nearly identical to a motion to dismiss by Farleigh Dickinson University, represented by the same defense counsel here, which was recently denied in full by Judge Wilson of Bergen County Superior Court.  *See Doval v. Fairleigh Dickinson Univ.*, No. BER-L-0004966020 (N.J. Feb. 5, 2021), attached as Exhibits 1-2.  This Court should similarly deny Defendant Stevens Institute of Technology's (hereinafter, "Stevens" or "Defendant") motion to dismiss in its entirety.

Beginning in March 2020, the COVID-19 global pandemic disrupted the daily lives of nearly all Americans.  Among the hardest hit were students, like Plaintiff Leah Mitelberg ("Plaintiff"), who paid tens of thousands of dollars in tuition and fees in exchange for an in-person, on-campus educational experience, including all of the services, opportunities, and activities that come therewith, only to have that in-person experience ripped away.  Students, like Plaintiff, could have paid for enrollment in an online program at a significantly lower price, but opted to pay a premium for an in-person educational experience.  Many students and their families undertook significant debt to make these tuition and fee payments.  Nonetheless, although it has an endowment of over $224 million, Defendant has refused to refund a penny of the tuition and fees that students, like Plaintiff, paid for an in-person educational experience.  As is clear from its Motion to Dismiss, Defendant believes that its students should bear the entire cost of the COVID-19 pandemic.  *See*

Defendant's Memorandum Of Law In Support Of Its Motion To Dismiss Plaintiff's Complaint ("MTD") (ECF No. 4-1).  The Court should not permit this inequity.

The crux of Defendant's Motion is that, as an educational institution, it is subject to its own special set of laws that grant it near immunity from all suit. Specifically, Defendant argues that Plaintiff's claims sound in "educational malpractice," and that a student may only sue a university for breach of contract if he or she can point to an overwhelmingly specific contractual promise.  But that is not the law.[1]  Indeed, courts across the country have near unanimously denied substantially similar motions to dismiss made by other educational institutions arguing that claims brought in the COVID-19 context against universities constitute "educational malpractice."  *See Doval v. Fairleigh Dickinson Univ.*, No. BER-L-0004966020 (N.J. Feb. 5, 2021*)*; *Metzner v. Quinnipiac Univ.*, 2021 WL 1146922 (D. Conn. March 25, 2021); *Omori et al. v. Brandeis Univ.*, Case No. 1:20-cv-11021, ECF No. 52 (Memorandum & Order) (D. Mass. April 13, 2021); *Rhodes v. Embry-Riddle Aeronautical Univ., Inc.*, --- F. Supp. 3d ----, 2021 WL 140708 (M.D. Fla. Jan. 14, 2021); *McCarthy v. Loyola Marymount University*, 2021 WL 268242 (C.D. Cal. Jan. 8, 2021); *Hiatt v. Brigham Young Univ.*, --- F. Supp. 3d ----, 2021 WL 2021

---

[1] As detailed herein, courts hold that a student can sue a school for breach of contract, subject to the same contracts law as any other contracting party.  *See Moe v. Seton Hall Univ.*, 2010 WL 1609680 (D.N.J. Apr. 20, 2010).

WL 66298 (D. Utah Jan. 7, 2021); *In re: Boston Univ. Covid-19 Tuition Refund Litig.*, --- F. Supp. 3d ----, 2021 WL 66443 (D. Mass. Jan. 7, 2020); *Garland v. Western Mich. Univ.*, 2021 WL 305744 (Mich. Ct. Cl. Jan 6, 2021) ("*Garland II*"); *Bahrani v. Northeastern Univ.*, 2020 WL 7774292 (D. Mass. Dec. 30, 2020); *Bergeron v. Rochester Institute of Technology*, 2020 WL 7486682 (W.D.N.Y. Dec. 18, 2020); *Ford v. Rensselaer Polytechnic Institute*, 2020 WL 7389155 (N.D.N.Y. Dec. 16, 2020); *Chong v. Northeastern Univ.*, 2020 WL 7338499 (D. Mass. Dec. 14, 2020); *Rosado v. Barry Univ. Inc.*, 2020 WL 6438684 (S.D. Fla. Oct. 30, 2020); *Salerno v. Florida Southern College*, 488 F. Supp. 3d 1211 (M.D. Fla. Sept. 16, 2020); *Saroya v. Univ. of the Pacific*, 2020 WL 7013598 (N.D. Cal. Nov. 27, 2020); *Gibson v. Lynn Univ.*, 2020 WL 7024463 (S.D. Fla. Nov. 29, 2020); *Doe v. Univ.*, 2020 WL 7634159 (C.D. Ill. Dec. 22, 2020); *Cross v. Univ. of Toledo,* 2020 WL 4726814 (Ohio Ct. Cl. Jul. 8, 2020); *Milanov v. Univ. of Michigan*, 2020 WL 7135331 (Mich. Ct. Cl. Jul. 27, 2020); *Mellowitz v. Ball State Univ.,* 2020 WL 5524659 (Ind. Super. Ct., Marion Cty. Aug. 14, 2020); *Smith v. Ohio State Univ.*, 2020 WL 5694224 (Ohio Ct. Cl. Sept. 9, 2020); *Garland v. Western Michigan University,* 2020 WL 8365183 (Mich. Ct. Cl. Sep. 15, 2020); *McDermott v. Ohio State Univ.*, 2020 WL 5239892 (Ohio Ct. Cl. Aug. 24, 2020); *Waitt v. Kent State Univ.*, 2020 WL 5894543 (Ohio Ct. Cl. Sept. 28, 2020); *Zahn v. Ohio Univ.*, 2020 WL 6163919 (Ohio Ct. Cl. Oct. 19, 2020); *Verlanga v. Univ. of San Francisco*, 2020

WL 7229855 (San. Fran. Sup. Ct. Nov. 12, 2020); *Spiegel v. The Trustees of Indiana Univ.*, 2020 WL 7135320 (Ind. Cir. Nov. 19, 2020); *Kishinevsky v. Board of Trustees of Metro. State Univ. of Denver*, 2020 WL 7087313 (Colo. Dist. Ct. Nov. 23, 2020).

The reasoning is straight-forward: universities are not entitled to judicial deference in transactions involving more than pure academic judgment. For example, if a university contracts to sell one of its buildings and then reneges on the deal, the putative buyer is not required to face a special contractual standard because the defendant happens to be an educational institution.

Here, Plaintiff's claims are plainly not academic in nature, but rather commercial, based on fundamental principles of contract law. Plaintiff's Complaint ("Compl.") (ECF No. 1) does not take issue with the specific ways that individual professors elected to teach their classes once remote learning was mandated. Nor does Plaintiff suggest, for example, that classes should have been taught differently online. Rather, Plaintiff and the putative class paid millions of dollars to Defendant to purchase an in-person, on-campus educational experience with multiple benefits, services, experiences, and opportunities. But once the switch to remote learning occurred, Plaintiff and the class were denied the experience for which they bargained and paid, including interaction with other students, the use of Defendant's infrastructure, buildings, libraries, labs, computers, etc., in the particular student's chosen discipline. Plaintiff, like all parties to a contract, is entitled to receive the

benefit of their bargain.  The denial and deprivation of the rights, privileges, and in-person education, which Defendant has afforded students for the last 151 years, was a breach of contract between Plaintiff and Defendant.  Defendant intended for students to rely upon the promises Defendant made as part of its offers of admission and course registration, and the students did, in fact, rely upon Defendant's offers, to their detriment.

Although Defendant says it had to cease operations "to ensure the Spring 2020 semester would not be lost," MTD at 1, as the *Rosado* court explained when analyzing nearly identical facts, "[t]he question is not whether [Defendant University] was justified in closing its campus due to an unforeseen pandemic. Rather, the question is where that risk (i.e., the financial burden) should be contractually allocated.  That is what this lawsuit is about." *Rosado*, 2020 WL 6438684, at *4.

Simply put, Defendant did not provide Plaintiff with the services that it marketed to the public in order to distinguish itself from other competitors, even though Plaintiff bargained and paid for them.  The law does not permit Defendant to retain 100% of the monies Plaintiff paid.

## BACKGROUND

Defendant's Spring 2020 semester began on or about January 21, 2020 and concluded on or around May 18, 2020.  Compl. ¶ 10.  "[O]n March 17, 2020,

[Stevens] announced that classes would continue in online format through the end of the Spring 2020 Semester." *Id.* ¶ 11. "Stevens did not hold any in-person classes from March 11, 2020 through the end of the Spring Semester 2020." *Id.* ¶ 12. Classes that continued were only been offered in an online format, with no in-person instruction." *Id.* "As a result of the closure of Defendant's facilities, Defendant has not delivered the educational services, facilities, access and/or opportunities that Plaintiff and the putative class contracted and paid for." *Id.* ¶ 13. Thus, "Stevens did not provide in-person education, experiences, or related services for approximately 50% of the Spring Semester 2020." *Id.* ¶ 14. "Nonetheless, Stevens has not refunded any tuition or fees for the Spring 2020 Semester." *Id.* ¶ 15.

"Plaintiff and Class Members entered into a contractual agreement with Stevens where Plaintiff would provide payment in the form of tuition and fees, and Defendant, in exchange, would provide in-person educational services, experiences, opportunities, and other related services to Plaintiff and Class Members." *Id.* ¶ 3. "The terms of the contractual agreement were set forth in publications from Stevens Institute of Technology, including Stevens Institute of Technology's Spring Semester 2020 Course Catalog." *Id.* "The Course Catalog provided Plaintiff and Class Members with information regarding the courses offered, the instructor, the days and times during which the courses would be held, and the location (including the building and room number) in which classes would be held." *Id.* ¶ 5 (displaying

screenshot).  Stevens also provided Plaintiff and Class with the Stevens Course Scheduler ("Course Scheduler") that shows the dates, times, and location of the classes that they wish to sign up for.  *Id.* ¶ 6.



"[Plaintiff] is pursuing a degree in Cyber Security at Stevens."  *Id.* ¶ 18. "Plaintiff paid Defendant approximately $31,671 in tuition and fees for Spring Semester 2020."  *Id.*  "Prior to beginning the Spring 2020 semester, and prior to paying tuition and fees, Plaintiff consulted the Course Catalog and Course Scheduler and enrolled in courses for the Spring 2020 semester."  *Id.* ¶ 19.  "In consulting the Course Catalog and Course Scheduler, Plaintiff understood and believed that every course in which she enrolled was to be taught in-person."  *Id.*  "Indeed[,] Plaintiff's Spring 2020 semester schedule, as seen on the student schedule, shows that each and every class in which she enrolled was to be taught in-person."  *Id.* ¶ 20.

## STANDARD OF REVIEW

In considering a motion to dismiss under Rule 12(b)(6), a court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008) (quoting *Pinker v. Roche Holdings Ltd.*, 292 F.3d 361, 374 n.7 (3d Cir. 2002)); *Dillin v. Constr. & Turnaround Servs., LLC*, 2015 WL 5545236, at *2-3 (D.N.J. Sept. 18, 2015). "[A] complaint attacked by a ... motion to dismiss does not need detailed factual allegations[.]" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). But, conclusory or bare-bones allegations will not do. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). "To survive a motion to dismiss, a complaint must contain sufficient factual matter ... to 'state a claim to relief that is plausible on its face.'" *Id*. (quoting *Twombly*, 550 U.S. at 570); *see also Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-11 (3d Cir. 2009) (discussing the standard for motions to dismiss).

## ARGUMENT

## I.   PLAINTIFF STATES A CLAIM FOR BREACH OF CONTRACT

### A.   Plaintiff Has Sufficiently Pled A Specific Enforceable Promise

New Jersey courts have recognized that the relationship between a university and its students to provide an education is contractual in nature. *Moe*, 2010 WL

1609680, at *5. "[T]he four elements of contract formation in [New Jersey] are: 1) a meeting of the minds; 2) offer and acceptance; 3) valid consideration; and 4) reasonably certain contract terms." *Grossman v. Parking Authority of City of Camden*, 2013 WL 1144830, *3 (D.N.J. March 18, 2013). "To interpret an ambiguous contractual provision, a fact-finder must attempt to discover what the contracting parties, intended the clause to mean." *Teamsters Indus. Employees Welfare Fund v. Rolls-Royce Motor Cars, Inc.*, 989 F.2d 132, 136-37 (3d Cir. 1993). "To provide a measure of predictability for contracting parties, the objective manifestations of intent, rather than the unknowable subjective intent of the parties, govern this inquiry." *Id.*

### 1.   Plaintiff Identifies A Promise Of In-Person Education And Defendant's Breach Thereof

Defendant claims that "the contract claim fails because the Complaint does not identify any contract between Plaintiff and Stevens at all, let alone a contract in which Stevens unconditionally promised to provide Plaintiff with in person instruction." MTD at 13. But Plaintiff is not required to plead a hyper-specific, unconditional promise. Rather, Plaintiff has alleged that Defendant's publications contained many representations that reveal that an in-person and on-campus education was a basic assumption of what both parties believed Defendant was offering Plaintiff and the putative class. According to New Jersey law, "[o]ffer and acceptance [occurs when] one party communicate[s] a willingness to enter into the

agreement and the other party g[ives] some outward indication that the agreement was accepted." *Big M, Inc. v. Dryden Advisory Group*, 2009 WL 1905106, at *13 (D.N.J. June 30, 2009).  Based on this rule, this standard was met when Plaintiff signed up for classes on the basis of the information provided to her by Defendant in the 2020 Spring Semester Course Catalog, Course Scheduler, and in other University publications and representations.  Compl. ¶¶ 3-9, 13, 19, 51-64.

Here, nonetheless, Plaintiff's Complaint contains several paragraphs alleging specific promises made by Defendant.  Among them, Defendant promised Plaintiff and members of the proposed Class that it "would provide in-person educational services, experiences, opportunities, and other related services." *Id.* ¶ 3.  In addition, the Spring Semester 2020 Course Catalog contains specific promises regarding "the courses offered, the instructor, the days and times during which the courses would be held, and the physical on-campus location (including the building and room number) in which courses would be held." *Id.* ¶ 5.  Defendant also publishes a Course Scheduler, which displays the dates, times, and location of classes students wish to sign up for, and none of the classes Plaintiff signed up for were designated as online courses. *Id.* ¶ 6; *see also id.* ¶ 20 (student scheduler showing that every class Plaintiff registered for was to be taught in-person).

Plaintiff also alleges that Defendant's Academic Policies "encouraged on-campus activities by previously discouraging undergraduate students from taking

online courses.  Undergraduate students were generally limited to 'two online web courses per semester.'  If an undergraduate student wanted to sign up for any online classes, they needed the permission of his or her advisor.  To take more than two online courses required a GPA of 3.2 or higher and the permission of the Office of the Dean of Undergraduate Academics.  This policy created an expectation that any in-person class that a student signed up for would not move online."  *Id.* ¶ 8. Defendant also extensively markets its "stunning, waterfront campus" and its state-of-the-art facilities as benefits of enrollment, *id.* ¶¶ 33-35, and Defendant promised the ability to participate in in-person programs, opportunities, and activities.  *Id.* ¶¶ 38-40.  That is sufficient.  *See Bergeron*, 2020 WL 7486682, at *8 (finding promises to "work directly with faculty in their labs, vibrant and diverse campus life, access to superior technology, and robust on-campus support" were sufficiently specific to survive a motion to dismiss.); *Ford*, 2020 WL 7389155, at *5 (upholding a breach of contract claim where "plaintiffs … adequately alleged, through both the catalog and the Plan, that defendant released a publication expounding the virtues of its in-person programming that it ultimately did not provide.").[2]

---

[2] *Salerno*, 2020 WL 5583522, at *10 (finding plaintiff sufficiently alleged "that the College's publications clearly implied that courses would be conducted in-person. The College's materials also touted its many resources and facilities—all of which were located on-campus thereby implying in-person participation."); *Rosado*, 2020 WL 6438684, at *3 ("The Court is persuaded by *Salerno* and accordingly concludes that Rosado's allegations that Barry accepted $773 more per credit for in-person classes from Rosado, and actually provided in-person education to Rosado until March 19, 2020, in the backdrop of numerous other documents referring to in-person classes and amenities, are sufficient to establish, at minimum, an implied contract.").

Defendant attempts to downplay the significance of its promises and representations by looking at the Academic Catalog and Course Scheduler in isolation. MTD at 15-17. But this violates the rule that the allegations in a complaint are to be read as a whole, not parsed piece by piece. *Baskerville v. Society Hill at Droyers Point Condominium Ass'n*, 2009 WL 3849693, at *6 (N.J. Super. Ct. App. Div. Nov. 16, 2009) ("[The court] must accept as true the facts alleged in the complaint to determine whether, when indulgently viewed, they set forth a claim against defendants upon which relief can be granted. This requires a searching scrutiny of the complaint, made with liberality, as even a glimmer of a viable cause of action compels denial of the application."). Furthermore, New Jersey law instructs that the contractual obligations of the parties to an agreement are determined by analyzing the entire course of conduct of the parties rather than the piecemeal approach taken by Defendant. *Chemo Iberica, S.A. v. Betachem, Inc.*, 2016 WL 865734, at *1 (D.N.J. Mar. 7, 2016) ("[C]ourts will look to, among other things, all the relevant circumstances surrounding the transaction, as well as evidence of the parties' course of dealing, usage and course of performance.") (citing *Leitner v. Braen*, 51 N.J. Super. 31, 35 (1958)). When all the relevant circumstances, including all university publications, are considered in their entirety as New Jersey law instructs, Plaintiff clearly contracted with Defendant for an in-person, on-campus education.

Finally, in *Doval v. Fairleigh Dickinson Univ.*, No. BER-L-0004966020 (N.J. Feb. 5, 2021), Judge Wilson found that "[New Jersey] law requires that when the contract terms are ambiguous or the parties dispute their meaning, construction of the contract and the application of any evidence submitted to prove the surrounding circumstances, are for a jury." Ex. 2, *Doval* MTD Hearing Tr. at 30:20-24.

### 2. New Jersey Courts Recognize Implied Contracts Based On University Publications

Defendant ignores that Plaintiff may bring a breach of contract claim based on an implied contract in New Jersey. Indeed, "[a]n implied contract arises in the same manner as an express contract, except that the parties' intention, 'instead of being expressed in words, is inferred from acts in the light of the surrounding circumstances.' That is, the agreement is inferred from the conduct of the parties" and "intent can be gleaned from the parties' 'ordinary course of dealing[s].'" *Longenecker-Wells v. Benecard Servs. Inc*, 658 F. App'x 659, 662 (3d Cir. 2016) (internal citations omitted); *see also Wanaque Borough Sewerage Auth. v. Twp. of W. Milford*, 144 N.J. 564, 574 (1996) ("Thus, contracts implied in fact are no different than express contracts, although they exhibit a different way or form of expressing assent than through statements or writings. Courts often find and enforce implied promises by interpretation of a promisor's word and conduct in light of the surrounding circumstances.").

Importantly, courts in this District have found that an implied contract exists

between a university and its students.  *See Mucci v. Rutgers*, 2011 WL 831967, at

\*19 (D.N.J. Mar. 3, 2011) ("New Jersey recognizes an implied agreement between

students and universities").   Courts in this District have also found contractual

obligations arising from provisions found in university publications, similar to the

instant case.  *See Moe*, 2010 WL 1609680, \*5 ("Defendants also argue that Plaintiff's

contract claim is based upon a student manual and therefore fails as a matter of law.

Defendants' position … in the Court's view, misstates the law.").

Other courts have applied this principle to nearly identical facts.  *See Rosado*,

2020 WL 6438684, at \*3 (concluding that the plaintiff's "allegations that Barry

[University] accepted $773 more per credit for in-person classes from [the plaintiff],

and actually provided in-person education to [the plaintiff] until March 19, 2020, in

the backdrop of numerous other documents referring to in-person classes and

amenities, are sufficient to establish, at minimum, an implied contract") (applying

Florida law); *accord Metzner*, 2021 WL 1146922, at \*10; *Bergeron*, 2020 WL

7486682, at \*7-8 (finding plaintiffs' allegations of the defendant's promise to

provide in-person instruction sufficiently specific to withstand motion to dismiss

where they "allege a number promises made by [the defendant] with respect to the

benefits of enrollment in the more expensive in-person, on-campus program,

including: the opportunity to work directly with faculty members in their labs, multi-

faceted experiential learning, vibrant campus life, 'access to the finest laboratories,

technology, and computing facilities available on any campus', and 'a strong and robust network of support on campus to help you succeed,'" as "[t]hese allegations clearly extend beyond coursework to the entirety of the educational experience.").

Defendant's reliance on *Mittra v. University of Medicine and Dentistry of N.J.*, 316 N.J. Super. 83 (App. Div. 1998) is misplaced for several reasons. <u>First</u>, *Mittra* undercuts Defendant's argument because it was a summary judgment decision. Nowhere in *Mittra* does it suggest that Plaintiff's claims can be disposed of on the pleadings. <u>Second</u>, although Defendant argues that *Mittra* "applies with equal force to disputes over the quality of a university's educational offerings," such an application has been expressly rejected. *See Moe*, 2010 WL 1609680, at *5 ("To the extent that *Mittra ...* is contrary authority, i.e., in rejecting use of a manual to determine the scope of the relationship, <u>that case was expressly limited to academic performance, by which the Appellate Division meant an evaluation of the student's "ability to master the required curriculum."</u>) (emphasis added). "Here, by contrast the gravamen of the dispute does not relate to mastery of academic materials … Accordingly, Defendant's motion to dismiss the breach of contract related claims is denied." *Id.* at *5-6. <u>Third</u>, *Mittra* is factually distinguishable because there, "plaintiff presented no evidence indicating that UMDNJ deviated in some significant way from its published rules and regulations. His mere, conclusory allegation in his complaint that appropriate procedures were not followed was insufficient to

withstand summary judgment." *Mittra*, 316 N.J. Super. at 92. Here, by contrast, Plaintiff identifies specific deviations from Defendant's published materials. *See supra* and Compl. ¶¶ 3-9, 19-21, 32-34, 52-61.

Additionally, *Cruz v. Seton Hall Univ.*, 2012 U.S. Dist. LEXIS 96005 (D.N.J. July 10, 2012), is also distinguishable. In *Cruz* (which was at the summary judgement stage, not the motion to dismiss stage), the court found there was no evidence to support the student-plaintiff's allegations that he was asked to move rooms solely because of his sexual orientation. *Id.* at *18. Additionally, the alleged promise by the defendant was contained in materials that included a specific and unambiguous disclaimer, which gave defendant the "right to move a Resident from one room to another when the University determines, in its sole and absolute discretion that the move is in the Resident's best interest or those of his/her fellow students and/or the University's." *Id.* The instant case is not yet ripe to make a factual determination about evidence that has not been introduced. Additionally, the only disclaimer at issue here contains broad and ambiguous language that does not specifically claim the right to move classes online and retain 100% of tuition and fees while doing so. *See infra.* § II.A.2.

Here, there is no doubt that the parties unequivocally had a meeting of the minds for students to take classes in person and enjoy the many benefits of access to Defendant's physical campuses for the entire semester. This is clear not only from

16

the specific statements above, but also from the parties' prior course of conduct. Plaintiff showed up for in-person classes, and otherwise had access to campus facilities and services, every day of the week for months leading up the time that Stevens shut down.  Compl. ¶¶ 7-10.  Defendant maintained a policy that discouraged students from taking online courses.  *Id.* ¶ 8.  In sum, Plaintiff and Defendant clearly intended for the Spring 2020 Semester to be conducted in-person and on-campus.

Finally, at minimum, New Jersey law instructs that Defendant's argument is premature because "[w]hether the parties acted in a manner sufficient to create implied contractual terms is a question of fact generally precluding summary judgment."  *Troy v. Rutgers*, 168 N.J. 354, 365-66 (2001) (citations omitted); *see also id.* at 371-72 ("We find it persuasive that the federal district court, in its thoughtful opinion, determined that summary judgment was not appropriate on that issue.  The ultimate resolution of whether plaintiffs had an enforceable contract in respect of CY appointments must be rendered by the finder of fact.").  Thus, Defendant's argument is especially ill-suited for resolution on the pleadings. *Haverty v. Andres & Berger, P.C.*, 2004 WL 2701040, at *7 (N.J. Super. Ct. App. Div. Nov. 9, 2004) (following *Troy* and holding that "[f]or an express or implied contract, the contractual terms generally require specificity, but the degree of specificity required is a very fact-based determination."); *Reynolds v. Palnut Co.*,

330 N.J. Super. 162, 171-72 (App. Div. 2000) (holding summary dismissal of breach of implied employment contract claim inappropriate where factual issue over existence of oral policy).[3]

### B. Defendant's Disclaimer Is Too Ambiguous To Defeat Plaintiff's Claims At This Stage

Defendant attempts to evade its contractual obligations by relying upon a disclaimer in the Course Catalog stating that it can "change the information, regulations, requirements, procedures and policies announced in this catalog including but not limited to: requirements for admission; graduation or degrees; scheduling; credit or content of courses; fees; and calendars." MTD at 19. This reliance is misplaced. Such provisions do not allow Defendant to unjustly retain 100% of tuition and fees based on its disclaimer. For example, if a hurricane were to cause a cancelation of classes for a brief period of time, Defendant may still be obligated to make up the classes that were missed or pay the value therefor. *Kel Kim*

---

[3] Plaintiff is mindful of the court's decision in *Dougherty v. Drew University*, Case No. 2:21-cv-00249, ECF No. 17 (D.N.J.), which only allowed claims for fee refunds to proceed past the pleadings. Plaintiff respectfully suggests the correct approach was taken in *Doval v. Fairleigh Dickinson University*. Moreover, the *Beukas* court had the benefit of a trial and a "written stipulation of facts and exhibits as well as a certification containing additional undisputed facts submitted by defendants." *Beukas v. Bd. of Trustees of Fairleigh Dickinson Univ.*, 255 N.J. Super. 552, 554, 605 A.2d 776, 777 (Law. Div. 1991), *aff'd*, 255 N.J. Super. 420, 605 A.2d 708 (App. Div. 1992). No such factual record is present here that warrants disposing of Plaintiff's tuition claims on the pleadings. Further, in *Beukas*, the university shut down its programs <u>in between semesters</u>, not halfway through, while keeping the full semester's tuition. 255 N.J. Super. at 556. Additionally, the defendant in *Beukas* worked with its students to give them a tuition subsidy on account of the shutdown. 255 N.J. Super. at 557. Thus, to the extent a bad faith act is required, Plaintiff sufficiently alleges that Defendant has kept the entire semester's tuition money in bad faith. *See, e.g.*, Compl. ¶¶ 15-16.

*Corp. v. Central Markets, Inc.*, 70 N.Y.2d 900, 902 (1987) ("[O]nce a party to a contract has made a promise, that party must perform or respond in damages for its failure, even when unforeseen circumstances make performance burdensome."); *See Camp v. Parks*, 314 So.2d 611 (Fla. 4th Dist. Ct. App. 1975) (holding impossibility is a defense against specific performance but not monetary damages).

For this reason, other courts have declined to dismiss claims based on disclaimers very similar to Defendant's. In *McCarthy v. Loyola Marymount Univ.*, for example, a court found that a University's bulletin that included both "subject to change" language and a notice that the information was "not an offer to enter into a contract," was not specific or unambiguous enough to be given effect at the motion to dismiss stage. 2021 WL 268242, at *5; *see also Bergeron*, 2020 WL 7486682, at *7 ("Plaintiffs allege a number promises made by RIT with respect to the benefits of enrollment in the more expensive in-person, on-campus program… These allegations clearly extend beyond coursework to the entirety of the educational experience. Read in the light most favorable to Plaintiffs, as it must be at this stage of the proceedings, the scope of the so-called disclaimer – if disclaimer it is – is not broad enough to extinguish Plaintiffs' claims."); *Saroya*, 2020 WL 7013598, at *6 (rejecting similar disclaimer argument). And here, even if the provision of in-person classes was impossible, Defendant nevertheless retained the full value of the tuition paid by Plaintiff and class members, as well as other fees and expenses associated

with enrollment and on-campus facilities.  Compl. ¶¶ 61-62.  This is impermissible, even under Defendant's cited provisions.[4]

The disclaimer also lacks the requisite specificity under New Jersey law.  As the court held in *Behne v. Union City College*, language which sums to "subject to change," does not "constitute a sufficient disclaimer."  2018 WL 566207, at *1, n.2 (D.N.J. Jan. 26, 2018).

*Deen v. New Sch. Univ.*, 2007 WL 1032295 (S.D.N.Y Mar. 27, 2007) provides useful guidance.  In *Deen*, the court stated that a disclaimer needs to be specific to excuse a university from a promise that would otherwise be a contractual obligation. *Id.* at *2.  Furthermore, if a disclaimer is ambiguous, *Deen* found that extrinsic evidence would need to be introduced to resolve the ambiguity, which is inappropriate at the motion to dismiss stage.  *Id.* at *4 ("Because the disclaimer is ambiguous with respect to whether the catalogue promises graduates of the program an Actors Studio diploma, the Court next considers the availability of extrinsic evidence [to find the meaning of the disclaimer to the parties].").  In applying this

---

[4] At worst, Defendant's disclaimer-based arguments are inappropriate for resolution on the pleadings.  *See Metzner*, 2021 WL 1146922, at *10 ("Quinnipiac also notes that it 'reserved the right to change any provision of the Bulletin at any time.' It further notes that the Bulletin does not include any provision allowing for a refund of tuition or fees under the circumstances alleged.  However the Court deems such questions as to whether the specific terms of the alleged contract permit or preclude Plaintiffs' recovery improper for resolution without further factual development.").

rule, the court in *Deen* found that a disclaimer[5] very similar to Defendant's was ambiguous as to whether it applied to a university ending an association with the New York Actors Studio that it had previously advertised in its catalogue. *Id.* at *3. Thus, since both parties produced extrinsic evidence suggesting differing accounts of their reasonable expectations, there was a genuine issue of material fact that was unable to be resolved on summary judgement. *Id.* at *3-4.

The cases that Defendant cites highlight this issue because they were all decided on the basis of disclaimers that the court found clear and unambiguous. *See Skuse v. Pfizer, Inc.*, 244 N.J. 30, 37 (2020) ("We hold that those communications clearly and unmistakably explained the rights that [Plaintiff] would waive by agreeing to arbitration, thus complying with our waiver-of-rights case law"); *Gourdine v. Felician College*, 2006 WL 2346278 (N.J. Super. Ct. App. Div. Aug. 15, 2006) (Court found disclaimer specifically mentioned right to cancel program in its entirety before program was cancelled for financial reasons on motion for summary judgment); *Beukas v. Bd. of Trustees of Farleigh Dickinson Univ.*, 255 N.J. Super. 552, 564 (N.J. Super. Ct. Law Div. 1991) (on summary judgment, court found that disclaimer specifically claimed right to "eliminate any college" so long as it gave "adequate notification to its students," where dental school was closed for

---

[5] *See id.* at *1 (stating that "[c]ourse offerings, semester point evaluations, academic requirements, degree programs, tuition, fees, facilities, and faculty listed in this catalogue are subject to change without notice").

financial reasons); *Linder v. Occidental College*, 2020 WL 7350212 (C.D. Cal. Dec. 11, 2020) (disclaimer specifically mentioned modifying classes in the wake of a "national emergency.").

Defendant's disclaimer, by contrast, does not specifically notify students that their in-person, on-campus classes may move online halfway into the semester, and that Defendant will do so while retaining 100% of tuition and fees.  To the contrary, the statement is ambiguous.  The disclaimer could be understood to only apply to a change to a different physical location or a different time rather than a change to a strictly virtual program.  Thus, employing the reasoning in *Deen*, it would be inappropriate for the court to dismiss the instant case at this stage based on an ambiguous disclaimer.  If the meaning of the disclaimer at issue in *Deen* could not be resolved on summary judgement, the meaning of a nearly identical disclaimer here cannot be resolved on the pleadings.  *See Brandeis*, Case No. 1:20-cv-11021, ECF No. 52 ("Although Brandeis has reserved the right to make some changes to its course offerings, this Court cannot, at this stage of the litigation, rule as a matter of law that the disclaimer includes the right to convert all in-person courses to an online format.").

Moreover, these disclaimers do not give Defendant the right to unjustly withhold funds as a result of a move online.  As the *Rosado* court explained when analyzing nearly identical facts, "[t]he question is not whether [Defendant

University] was justified in closing its campus due to an unforeseen pandemic. Rather, the question is where that risk (i.e., the financial burden) should be contractually allocated. That is what this lawsuit is about." *Rosado*, 2020 WL 6438684, at *4. Defendant has not produced any agreement that shifts the financial burden to the Plaintiff and the putative class specifically in the event of a move online as would be required. *Hess Corp. v. ENI Petroleum US, LLC*, 435 N.J. Super. 39, 47 (N.J. Super. Ct. App. Div. 2014) ("Ordinarily, only if the force majeure clause specifically includes the event that actually prevents a party's performance will that party be excused.") (citing *Kel Kim Corp. v. Central Markets, Inc.*, 70 N.Y.2d 900, 902 (1987)). Here, even if the provision of in-person classes was impossible due to the coronavirus pandemic, Defendant nevertheless retained the full value of the tuition paid by Plaintiff and class members, as well as other fees and expenses associated with enrollment and on-campus facilities. Compl. ¶ 1. That is impermissible.

Finally, Defendant argues that allowing Plaintiff's claim to proceed would "open the floodgates to lawsuits against colleges and universities." MTD at 22. Defendant overlooks the irony, however, that consequences of its own position are far worse. As the court in *Milanov v. Univ. of Michigan* put it, "the Court notes troubling aspects of defendants' position. For instance, adopting defendants' position could lead to the conclusion that the university could simply cancel all

classes and then retain tuition and fees, having made the academic judgment that instruction was unnecessary or unwarranted." *Milanov,* 2020 Mich. Ct. Cl. LEXIS 1, *9, n.1.

### C.    Defendant's Remaining Arguments Are Without Merit

Defendant further argues that "Stevens expressly advised Plaintiff that fees would apply regardless of whether the courses were taught in-person or online." MTD at 17. This is untrue. Defendant ignores that its academic policies did not even permit full time students, like Plaintiff, to take more than "two online web courses per semester." Compl. ¶¶ 8, 54. In fact, if an undergraduate student wanted to sign up for any online classes, she needed permission from her advisor. *Id.* To take more than two online courses required a GPA of 3.2 or higher and the permission of the Office of the Dean of Undergraduate Academics. *Id.* This policy created an impression that online courses at Stevens were rare, that a fully online undergraduate experience was nonexistent, and that the fees were supporting an on-campus experience. Thus, it is impossible for a footnote in a fee description to give notice that the fee would apply if the students were switched to a non-existent program.

Furthermore, prior to the March 2020 shutdown, even online students had access to on-campus facilities, activities, and organizations supported by the General Service Fee, the Student Activity Fee, and other fees. *See id.* ¶¶ 38, 59. Thus, prior

to the March 2020 shutdown, online students enjoyed the benefits of the fees that they paid for.  After the March 2020 shutdown, however, students lost access to the on-campus facilities, activities, and organizations that are supported by these fees. *Id.* ¶¶ 13, 32-34.

Courts around the country have recognized this point, allowing fee claims to proceed on similar facts in the wake of COVID-19.  For example, in *McDermott*, the student plaintiffs sought "to recover a prorated amount" of (1) "the student union fee, which plaintiff asserts was collected from each student specifically in exchange for use of the now-closed student union building," and (2) "the clinical support fee, which plaintiff similarly asserts was collected from each DDS candidate in order to provide for them live clinical programs."  *McDermott*, 2020 Ohio Misc. LEXIS 127, at \*1.  In denying defendant's motion to dismiss, the court held that allegations that the "defendant charged a fee specifically to support the dental clinic and then closed the clinic" would state claims for breach of contract and unjust enrichment.  *Id*. at \*4.  *See also Salerno*, 2020 WL 5583522, at \*2 (denying motion to dismiss breach of contract and unjust enrichment claims for return of "tuition and fees"); *Cross*, 2020 Ohio Misc. LEXIS 121, \*1 (denying motion to dismiss breach of contract and unjust enrichment claims for "refusal to provide adequate restitution for tuition, room and board, [and] fees"); *Milanov*, 2020 Mich. Ct. Cl. LEXIS 1, at \*1 (denying motion to dismiss breach of contract and unjust enrichment claims for return of

money paid for "in-person instruction, housing, meals, and student activities"); *Smith*, 2020 WL 5694224, at *1 (same); *Waitt*, 2020 WL 5894543, at *1 (same); *Zahn*, 2020 Ohio Misc. LEXIS 230, at *3 (same); *Garland*, 2020 Mich. Ct. Cl. LEXIS 7, at *1 (same); *Mellowitz*, 2020 WL 5524659, at *1 (same); *Rosado*, 2020 WL 6438684, at *4 ("[Defendant's] arguments are predicated on the notion that, if a breach existed with respect to the transition to online teaching, it was *de minimis*, since Rosado would still earn credits toward a diploma.  This is kind of like purchasing a Cadillac at full price and receiving an Oldsmobile… That is [Defendant]'s argument and the Court declines to consider it further.").

Defendant also fails to address the specific promises made in its faculty handbook.  As noted in Plaintiff's complaint, "Stevens provides its faculty with a 'Faculty Handbook,' which sets forth many of the policies and procedures regarding faculty, including their teaching obligations to students.  *Id.* ¶¶ 9, 55.  One such obligation, of which students are the intended beneficiaries, is that "[f]aculty must be present to meet all assigned classes at the place and hour scheduled."  *Id.*  The handbook also states that the number of class meetings per session "may not be varied by individual teachers."  *Id.*  This further gives rise to the expectation of in-person learning, and here too, Defendant breached this promise.  *Id.* ¶¶ 9, 55-59.

In response, Defendant only states that "Plaintiff does not allege that she ever read [the relevant promise in the Faculty Handbook]."  MTD at 9.  Not so.  Plaintiff

alleges that she was deprived of the benefit of the bargain found in university publications, which includes the Faculty Handbook.  Compl. ¶¶ 3, 7, 9, 53.  Even if Plaintiff did not specifically allege that she relied upon the provisions in the Faculty Handbook, reliance is a factual matter inappropriate for resolution on a motion to dismiss.  *Hartig Drug Company Inc. v. Senju Pharmaceutical Co. Ltd.*, 836 F.3d 261, 268 (3d Cir. 2016).  Plus, that can be cured via amendment.

Defendant also notes that "Plaintiff does not qualify for a refund under [Stevens' fees refund policy]," because "Plaintiff does not plead she sought to withdraw."  MTD at 18.  This is irrelevant.  As Defendant notes, in order to qualify for a full refund "the withdrawal [must] occur[] during the first week of the semester."  *Id*.  However, Defendant did not move classes online until 50% into the semester, so Plaintiff's would have no reason to withdraw during the refund period since she was not warned that classes would eventually no longer be conducted in-person.  Moreover, a non-breaching party is entitled to "choose to proceed with the contract and recover in damages for the injuries caused by the breach."  *Deerhurst Estates v. Meadow Homes, Inc.*, 64 N.J. Super. 134, 145 (N.J. Super. Ct. App. Div. 1960) (citing Restatement, Contracts, § 410, comment (b)).  *See also Deerhurst Estates*, 64 N.J. Super. at 145 ("Simply because he is informed by the defaulting party that the latter cannot or will not perform one of his obligations under the contract, the injured party, by choosing to proceed nonetheless, obviously does not

manifest agreement that the performance received is in full satisfaction of all contractual obligations.").

Other courts faced with nearly identical facts have applied this same reasoning. *See Rosado*, 2020 WL 6438684, at *5 ("[Defendant] has not provided sufficient support for its position that [Plaintiff] was required to threaten [Defendant], risk financial loss, and disrupt her academic career [by withdrawing from her classes] in order to preserve her contractual remedies"). Thus, Plaintiff was entitled to complete the semester and then sue for damages, as she did within weeks of Defendant's breach.

## II.    PLAINTIFF STATES A CLAIM FOR UNJUST ENRICHMENT

Defendant argues that Plaintiff's claim for unjust enrichment fails for two reasons. First, Defendant argues Plaintiff's claim cannot stand because "the claim is duplicative of the breach of contract claim." MTD at 23. That is wrong. Under New Jersey law, an unjust enrichment claim may be sustained independently as an alternative theory of recovery. *In re K-Dur Antitrust Litigation*, 338 F. Supp. 2d 517, 544 (D.N.J. 2004) (finding defendant's motion to dismiss plaintiff's unjust enrichment claim as premature even where other remedies at law were available to plaintiff). "Unjust enrichment is a backstop cause of action that often turns out to be superfluous if, for example, a breach of contract is shown." *Dzielak v. Whirlpool Corp.*, 26 F. Supp. 3d 304, 331 (D.N.J. 2014). But Plaintiff pleads this claim in

the alternative, as she is permitted to do at this stage. *Id*.; Compl. at Count II ("Unjust Enrichment … On Behalf Of The Class And Subclass In The Alternative"); *see also* Fed. R. Civ. P. 8(d)(2) ("A party may set out two or more statements of a claim or defense alternatively or hypothetically, either in a single count or defense or in separate ones."). At this stage, it would be premature to dismiss an unjust enrichment claim simply because it may later be eclipsed by some other cause of action. *See Palmeri v. LG Electronics USA, Inc.*, 2008 WL 2945985 at *7 (D.N.J. July 30, 2008) ("It is inherent in a claim for unjust enrichment that it is pled in the alternative to a claim for recovery on the contract."). For this reason, the court in *Doval v. Fairleigh Dickinson* allowed the plaintiffs' unjust enrichment claim to proceed in the alternative. The Court should do so here as well.

Second, Defendant argues that "Plaintiff's unjust enrichment claim fails because Plaintiff does not adequately allege that Stevens unjustly retained the benefit of her tuition and fees." MTD at 24. That is wrong. To state a claim for unjust enrichment, a plaintiff must allege "(1) that the defendant has received a benefit from the plaintiff, and (2) that the retention of the benefit by the defendant is inequitable." *Wanaque Borough Sewerage Auth. v. Twp. of West Milford*, 144 N.J. 564, 575, 677 A.2d 747 (1996). Plaintiff has done just that by alleging that "Plaintiff and members of the Class and Subclass conferred a benefit on Defendant in the form of monies paid for Spring Semester 2020 tuition and other fees in exchange for

certain services and promises," that "Defendant has failed to provide the education, experience, and services for which the tuition and fees were collected," and that "Defendant's retention [was] unjust under the circumstances."  Compl. ¶¶ 67, 69.

Next, Defendant argues that because "Plaintiff attended courses and received credits, there can be no unjust enrichment."  MTD at 25.  But this argument misses the mark.  Equity and good conscience require disgorgement not because Defendant switched Plaintiff's classes online without giving her college credits, but because Defendant switched her classes to online format while retaining the tuition and fee monies Plaintiff paid for an in-person education, experience, services, as well as access to Defendant's facilities.  Compl. ¶¶ 67-72.[6]  Expecting students and their families (most of whom have incurred substantial debt in order to finance their purchases from Defendant) to continue to pay for 100% of the products, programs, access, and services that were never provided is the inequity here.

## III.   PLAINTIFF STATES A CLAIM FOR CONVERSION

Defendant argues that Plaintiff's claim for conversion fails because it is "duplicative of the breach of contract claim."  MTD at 26.  But that argument fails

---

[6] For this reason, Defendant's argument that its "actions were not unjust" is belied by Plaintiff's allegations.  MTD at 25.  Moreover, Defendant's argument that Plaintiff does not allege Defendant "failed to utilize the tuition and fees it received to further its charitable mission" misses the mark.  *Id.*  That is not an element of unjust enrichment.  Plaintiff's claim is predicated on the fact that she and the putative class overpaid for an in-person education that they did not receive.  That is sufficient.  *See Doval*, Ex. 1; *see also Rosado*, 202 WL 6438684, at *6 ("The Court concludes that Rosado has pled sufficient facts to withstand dismissal of her unjust enrichment claim.  Although Barry disputes that the retention of the payments was 'unjust,' a motion to dismiss tests the sufficiency of the pleading, not the merits of the case.").

because, like his unjust enrichment claim, New Jersey law allows a conversion claim to be pled in the alternative. *George E. Warren Corporation v. Colonial Pipeline Company*, 2017 WL 3038251, at *3 (D.N.J. July 17, 2017) ("[Plaintiff] pled conversion in the alternative, … [a]nd a party may, of course, set forth alternative versions of a claim in its pleadings.").

Defendant next argues that "Plaintiff's conversion claim also fails [because] Plaintiff does not allege "that Stevens wrongfully exercised dominion and control over the tuition and fees she paid." MTD at 27. But that is incorrect. Under New Jersey law, conversion is defined as "an unauthorized assumption and exercise of the right of ownership over goods or personal chattels belonging to another, to the alteration of their condition or the exclusion of an owner's rights." *Capital Health Sys. v. Veznedaroglu*, 2017 WL 751855, at *10 (D.N.J. Feb. 27, 2017) (quoting *Ricketti v. Barry*, 2015 WL 1013547, at *8 (D.N.J. Mar. 9, 2015)). A conversion claim must consist of the following elements: "(1) the existence of property, (2) the right to immediate possession thereof belonging to [the] plaintiff, and (3) the wrongful interference with that right by [the] defendant." *Capital Health Sys.*, 2017 WL 751855, at *10.

Here, Plaintiff alleges she had identifiable legal rights to an in-person, on-campus experience when she paid tuition and fees in exchange for that particular purpose. Compl. ¶ 75. Plaintiff also alleges that Defendant retained possession of

those funds, to the exclusion of Plaintiff, and that such retention was unauthorized because Defendant failed to apply the funds to the particular purpose for which they were paid. *Id.* ¶¶ 76-79. Accordingly, Plaintiff states a claim for conversion.

## IV. PLAINTIFF STATES A CLAIM FOR MONEY HAD AND RECEIVED

Defendant argues that Plaintiff's claim for money had and received fails because it is duplicative of the breach of contract claim. MTD at 28. But here too, Plaintiff may pursue a claim for money had and received in the alternative. *In re K-Dur Antitrust Litigation*, 338 F. Supp. 2d at 544.

## V. PLAINTIFF DOES NOT ALLEGE EDUCATIONAL MALPRACTICE

Defendant attempts to recast Plaintiff's allegations as claims of "educational malpractice," which they argue "are not cognizable under New Jersey law." MTD at 28. But every action by a student or parent against a school is not an educational malpractice claim. Where the breach of contract does not ask the court to "evaluate the course of instruction," nor allege "that the school breached its agreement by failing to provide an effective education," but instead alleges failure to provide specified services, the action may be properly maintained. *Paladino v. Adelphi Univ.*, 454 N.Y.S.2d 868, 873 (2d Dep't 1982) ("[I]f the contract with the school were to provide for certain specified services … for example, a designated number of hours of instruction, and the school failed to meet its obligation, then a contract action with appropriate consequential damages might be viable."); *see also Williams*

*v. Bd. of Ed. Of Paterson*, 2017 WL 3131974, at *4 (D.N.J. July 21, 2017) (finding plaintiff's claim was not educational malpractice where it was "not one of misjudgment in designing an educational regime").

Indeed, courts across the country have uniformly held that claims like those Plaintiff brings here are <u>not</u> based on educational malpractice. *See, e.g.*, Ex. 1, *Doval v. Fairleigh Dickinson Univ.* (denying substantially similar motion to dismiss despite an identical educational malpractice argument); *Ford*, 2020 WL 7389155, at *6 ("[P]laintiffs' claims do not run afoul of the educational malpractice prohibition by merit… [Plaintiffs] do not challenge the merits of [Defendant University's] decision to shift to remote learning, which is what New York's educational malpractice rule seeks to avoid."); *Gibson*, 2020 WL 7024463, *13-14 (holding that "this is not a case about the quality of the education Lynn provided students during the Spring 2020 semester", but rather based on "Lynn's alleged failure to provide in-person, on-campus instruction and access to campus facilities and resources."); *Salerno*, 2020 WL 5583522, at *5 (holding claim was not based in educational malpractice where "[Plaintiff] also admits in her response that her claim is not about the College's decision to move to online learning. This case is simply about an alleged promise to provide in-person learning that was allegedly breached."); *Cross*, 2020 WL 4726814, at *3 ("Cross's Complaint presents claims of breach of contract and unjust enrichment – not … 'educational malpractice,' as asserted by UT.").

*Verlanga*, 2020 WL 7229855, at 7-8 ("This action does not involve what is essentially an educational malpractice claim or a decision that involves disciplinary discretion.  Ruling on this fee dispute would not require an inquiry into the nuances of educational processes and theories, but rather than objective assessment of the University's performance of its promise.") (internal emphasis omitted).[7]

*Moe v. Seton Hall* is instructive.  In *Moe*, the plaintiff sued Seton Hall University for breach of contract, among other claims, alleging that it wrongfully dismissed her from her academic program by failing to comply with its policies and procedures concerning grading disputes and leaves of absence.  2010 WL 1609680, at *1-2.  The court denied the University's motion to dismiss the breach of contract claim because "the gravamen of the dispute d[id] not relate to mastery of academic materials, but relate[d] to whether or not Moe complied with the procedures for taking leave and whether or not the University complied with its own procedures for grading and adjudicating grievances."  *Id.* at *5.  The *Moe* court found that while courts generally may not "intrude upon academic freedom … the sort of dispute

---

[7] *See also Mellowitz*, 2020 WL 5524659, at *1 (denying substantially similar motion to dismiss); *Smith*, 2020 WL 5694224, at *2  ("The essence of plaintiff's breach of contract claim is that she contracted for in-person classes and received online classes instead.  The mere mention of possible consequences to plaintiff's educational or professional future does not render plaintiff's complaint a claim for educational malpractice."); *Garland*, 2020 WL 8365183, at *10 ("[P]laintiff is not asking the Court to interfere with or evaluate the substance of educational decision.  Instead, she is alleging that she was promised one form of instruction, and that she had an express contractual agreement for the same, but that WMU switched the method of instruction without providing a refund."); *Waitt*, 2020 WL 5894543, at *2 ("KSU's suggestion that Waitt presents disguised educational malpractice claims is unpersuasive.").

allege here does not raise those policy concerns." *Id.*

*Ansari v. New York University*, 1997 WL 257473 (S.D.N.Y. May 16, 1997) also provides useful guidance. In *Ansari*, the court determined that promotional literature and written and oral communications between defendant and plaintiff comprised the terms of a contract and were the equivalent of promises that bound the university. *Id.* at *3. These materials included promises to provide state-of-the-art facilities, hands-on training, and program activities from 9:00 am to 4:00 pm every day. *Id.* The plaintiff alleged that defendant failed to deliver the hands-on training and facilities promised. Defendant argued that it delivered substantially what it promised, and the deviations alleged by plaintiff were insubstantial. *Id.* at *4. The court determined that plaintiff could maintain an action for breach of contract as it was not required to review any educational decisions because the fact-finding was limited to whether the promises represented by the institution were provided, and denied the motion to dismiss. *Id.*; *see also id.* at *3 ("Plaintiff's claim does not require an evaluation of uniquely professional academic decisions such as the adequacy of the courses or methods of instruction. Rather, plaintiff's claim requires an evaluation of whether defendants promised to provide services and failed to do so.").

Here, Plaintiff's claims do not allege educational malpractice. Rather, Plaintiff alleges that she "entered into a contractual agreement where Plaintiff would

provide payment in the form of tuition and fees, and Defendant, in exchange, would provide in-person educational services, experiences, opportunities, and other related services."   Compl. ¶ 3.   Plaintiff alleges that such rights included "access to university facilities, including laboratory equipment," "peer collaboration," and "in-person instruction."  *Id.* ¶ 19.  It is undisputed that Defendant failed to provide these things from March 13, 2020 through the end of the Spring Semester 2020, and instead provided Plaintiff with online remote learning that did not include any in-person or on-campus experience.  *Id.* ¶¶ 11-17.  Plaintiff's allegations do not ask the Court to review the educational decisions made by Defendant.   Rather, Plaintiff disputes Defendant's decision to retain 100% of tuition and fee monies paid for an in-person experience that Defendant did not deliver.

The cases cited by Defendant are readily distinguishable.  In *Myers v. Medford Lakes Bd. of Educ.*, 199 N.J. Super. 511 (App. Div. 1985), the plaintiff "alleged educational malpractice in failing to provide him with a special remedial education to assist him to overcome his academic deficiencies."  *Id.* at 513. Similarly, in *Swidryk v. Saint Michael's Medical Center*, 201 N.J. Super. 601 (Law Div. 1985) and *Cavaliere v. Duff's Business Institute*, 605 A.2d 397 (Pa. Super. Ct. 1992), the plaintiff brought claims challenging the quality and difficulty of the education they received.  *See Swidryk*, 201 N.J. Super. at 603 (medical resident plaintiff alleged that his supervising physician "was negligent in that his [supervision of the plaintiff] as

director of medical education fell below the standard of care essential to protect others from an unreasonable risk of harm"); *Cavaliere,* 605 A.2d at 398 ("The issue is whether a complaint that pleads generally that students at a private court reporting school were given inadequate and improper instruction, in breach of an alleged implied contract for a quality education.").  The claims in *Swidryk* and *Cavaliere* necessarily required "inquiry into the day to day operation" of an educational organization.  *Id.* at 645.  Here, in contrast, the claims at issue only require the court to evaluate "whether defendants promised to provide services and failed to do so." *Ansari*, 1997 WL 257473, at *3.

*O'Brien v. Pennington School*, 2008 WL 160588 (E.D. Pa. Jan. 15, 2008), cited by Defendant, highlights this distinction.  There, in applying New Jersey law to the plaintiffs' breach of contract claims against a school, the court found that while the "general theory that Defendant failed to provide adequate or effective educational services to" the plaintiffs sounded in educational malpractice, the plaintiffs' claims "that Defendant engaged in conduct that constitutes breaches of specific contractual promises" did not.  *Id.*  The same reasoning applies here.

Defendant's reliance on *Regents University of Michigan v. Ewing*, 474 U.S. 214 (1985) is also inapposite, as the *Milanov* court explained:

> Plaintiffs are not asserting a due process violation or arguing that the University's decision to switch methods of instruction ran afoul of any constitutional rights.  Instead, they are arguing that the university promised one method of instruction, charged tuition and fees

commensurate with that method of instruction, yet provided a different (allegedly lesser) method of instruction.  This is a claim potentially sounding in contract or quasi-contract, not in due process.  The *Ewing* decision does not stand for the notion that any decision regarding academics is beyond review for a court.  That is, while *Ewing* describes a number of areas into which a Court should be hesitant to intrude, principles of contract and quasi-contract are not among those areas.

*Milanov,* 2020 WL 7135331, at *8-9; *see also Garland,* 2020 WL 8365183, at *10 ("Here, in contrast to *Ewing*, however, plaintiff is not asking the Court to interfere with or evaluate the substance of educational decision.  Instead, she is alleging that she was promised one form of instruction, and that she had an express contractual agreement for the same, but that WMU switched the method of instruction without providing a refund.").  Indeed, "adopting defendants' position could lead to the conclusion that the university could simply cancel all classes and then retain tuition and fees, having made the academic judgment that instruction was unnecessary or unwarranted." *Milanov*, 2020 WL 7135331, at *9, n.1.

Defendant's citation to *Krebs v. Charlotte School of Law, LLC*, 2017 WL 3880667 (W.D.N.C. Sept. 5, 2017) is misleading.  In *Krebs*, the court's decision was based on the failure of the plaintiffs to allege any specific promises that the Defendant law school was ABA accredited.  *Id.* at *5 ("Plaintiffs herein do not identify any written contract and provide no meaningful substance (or even the date) of any such alleged agreement … about the quality of education, ABA accreditation, or a 'rigorous curriculum.'").  In fact, the court properly stated the accepted standard

that a "student must point to a 'specific promise' about which a court can make an 'objective assessment' without evaluating the 'nuances of educational processes' to state a claim for breach of contract." *Id.* Here, unlike in *Krebs*, Plaintiff has pointed to multiple specific promises made by Defendant to provide an in-person and on-campus experience. Compl. ¶¶ 3-9, 19-25, 30-32, 37-39, 54-60. Unlike the vague analysis of the quality of education that was at issue in *Krebs*, the question of whether classes were held in-person or online is objective and simple.

Defendant's reliance on *Paynter v. New York University*, 66 Misc.2d 92 (N.Y. App. Term 1971) is also inapposite. *Paynter* is a two-paragraph appellate decision of a small claims case involving a judgment, not a motion to dismiss. *Id.* And in *Paynter*, the defendant suspended classes in May, less than three weeks before the scheduled end of the semester, "for the time remaining in the school year prior to the examination period." *Id.* That is a far-cry from suspending in-person classes and all on-campus activities for 50% of the semester. Compl. ¶ 16. As discussed in the Introduction, *supra*, courts across the country dealing with nearly identical actions have denied motions to dismiss on these grounds.

Finally, Defendant relies on *Lindner v. Occidental College*, 2020 WL 7350212 (C.D. Cal. Dec. 11, 2020) as authority. However, *Lindner*, which did not apply New Jersey law, is currently on appeal due to its reliance on *Chong v. Ne. Univ.*, 2020 WL 5847626 (D. Mass. Oct. 1, 2020) ("*Chong I*"), which was

subsequently superseded by *Chong v. Ne. Univ.*, 2020 WL 7338499 (D. Mass. Dec. 14, 2020) ("*Chong II*"). In *Chong II*, the court denied the motion to dismiss the amended complaint holding the scope of the alleged contract to be a question of fact to be determined at a later stage and concurring with the overwhelming majority of other courts that the plaintiffs' claims did not sound in educational malpractice.

In sum, the deference granted to educational institutions in certain matters is not as broad or all-encompassing as Defendant contends. Instead, such deference is granted only in cases involving highly specialized academic judgments. The decision to retain monies paid for products and services that were never delivered is a standard commercial business decision, and one encountered by all market participants who take money in return for the promise to deliver services and/or products. Defendant's decision to retain such monies, in this case, was not academic in nature and clearly not a highly specialized academic judgment. Plaintiff's claims do not rise in educational malpractice, and thus no special deference is afforded to Defendant.

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court deny Defendant's motion to dismiss in its entirety. In the event the Court determines Plaintiff's allegations are deficient in any respect, Plaintiff respectfully requests leave to amend to cure such deficiencies.

Dated: April 19, 2021

Respectfully submitted,

By: _____ */s/ Philip L. Fraietta* _____
　　　　Philip L. Fraietta

**BURSOR & FISHER, P.A.**
Philip L. Fraietta
Alec M. Leslie (*pro hac vice* app. forthcoming)
888 Seventh Avenue
New York, NY 10019
Telephone: (646) 837-7150
Facsimile:  (212) 989-9163
Email:  pfraietta@bursor.com
　　　　aleslie@bursor.com

*Attorneys for Plaintiff*

41