**EXHIBIT 2**

                              SUPERIOR COURT OF NEW JERSEY
                              LAW DIVISION: CIVIL PART
                              BERGEN COUNTY
                              DOCKET NO.: L-4966-20
                              A.D. # _____

STEVEN DOVAL,              )
MELISSA AND CEANA CUELLO,)
                          )
          Plaintiffs,     )          TRANSCRIPT
                          )
          vs.             )              OF
                          )
FAIRLEIGH DICKINSON       )            MOTION
UNIVERSITY,               )
                          )
          Defendant.      )

                    Place: Bergen County Justice Center
                           (Heard via Zoom)


                    Date: February 5, 2021

BEFORE:

      HONORABLE ROBERT C. WILSON, J.S.C.

TRANSCRIPT ORDERED BY:

      PHILIP L. FRAIETTA, ESQ, (Bursor & Fisher, PA)

APPEARANCES:

      PHILIP L. FRAIETTA, ESQ. (Bursor & Fisher, PA)
      Attorney for Plaintiff's

      ANGELO STIO, ESQ. (Troutman Pepper Hamilton)
      Attorney for Defendant

                    Transcriber: Hollie Bennett
                    PHOENIX TRANSCRIPTION
                    796 Macopin Road
                    West Milford, NJ 07480
                    (862)248-0670

                    Audio Recorded
                    Recording Opr: Not indicated

<u>I N D E X</u>

                                                        <u>PAGE</u>


Colloquy re: Housekeeping.........................3



<u>MOTIONS</u>:                               <u>PAGE</u>
Motion to Dismiss........................4

<u>ARGUMENTS</u>:                                    <u>PAGE</u>

BY:  Mr. Stio..................................4,23

BY:  Mr. Fraietta.............................13,27

<u>THE COURT</u>:

Decision.........................................30

```
 1              (Proceeding commenced @ 11:47:43 a.m.)

 2              THE COURT:  This is the matter of Steven

 3   Doval and Melissa Cuello and Ceana Cuello,

 4   individually, on behalf of all others similarly

 5   situated, versus Fairleigh Dickinson University on

 6   L-4966-20.  Counsel for the plaintiff who is on the

 7   motion, may I have your appearance, please?

 8              MR. FRAIETTA:  Good morning, Your Honor, this

 9   is Phil Fraietta of Bursor and Fisher.  I'm joined by

10   my colleague, Alec Leslie, as well as co-Counsel,

11   Antonio Vidoya (phonetic).

12              THE COURT:  Yes, but who will be arguing the

13   motion?

14              MR. FRAIETTA:  I will, Your Honor -- Mr.

15   Fraietta.

16              THE COURT:  All right, Mr. Fraietta, then

17   everyone else who is listening in must put their phones

18   on mute.  And, on behalf of Fairleigh Dickinson

19   University, may I have your appearance?

20              MR. STIO:  Yes, good morning, Your Honor,

21   Angelo Stio from Troutman, Pepper, Hamilton.  I have

22   with me my colleague, Chris Kierri (phonetic) and the

23   general Counsel for FDU, Edward Silver.  Angelo Stio

24   will be arguing the motion on behalf of FDU, Your

25   Honor.
```

4

1          THE COURT:  And, all are welcome to listen,

2    but Mr. Stio, you're the only one who will un-mute

3    their microphone.  Everyone else should now be on mute

4    because I believe it is your Motion to Dismiss the

5    plaintiff's complaint.  And, I'll hear your oral

6    argument for 10 minutes and then I'll recognize your

7    adversary for 10 minutes.  You may proceed.

8          MR. STIO:  Thank you, Your Honor.  Your

9    Honor, this cases arises from the COVID-19 pandemic.

10   Approximately half way into Fairleigh Dickinson's

11   spring semester, Governor Murphy entered an executive

12   order that required all universities to cease having in

13   person instruction.

14          In response to that executive order, FDU

15   quickly transitioned to a virtual learning environment

16   to deliver an education to its students, save the

17   spring semester, in the only way it was permitted to do

18   so under the law.  And, they took that action in

19   accordance with an expressed provision both in their

20   student handbook and in their student bulletin that

21   reserved the right for them to change courses, change

22   schedules, change times, change professors, and offer

23   reasonable alternatives.

24          And, Your Honor, that's what happened here.

25   Now, the plaintiff's have alleged that FDU breached the

1   contract that they had for in person education.

2   Plaintiff's don't point to any expressed provision.

3   They rely on an implied contract.  And, what they say,

4   Your Honor, is that there's a course catalog and the

5   course catalog implies a promise of in person

6   instruction because it lists courses, the days the

7   courses would meet, the instructor, and the physical

8   location on campus.  So, that's the implied contract --

9          THE COURT:  Mr. Stio -- Mr. Stio --

10         MR. STIO:  Your Honor, that's not an implied

11  contract --

12         THE COURT:  Mr. Stio -- Mr. Stio, can you

13  hear me?

14         MR. STIO:  It's general course information

15  and guidance --

16         THE COURT:  Oh no, you can't --

17         MR. STIO:  There was a case just last week

18  that --

19         THE COURT:  Mr. Stio, I -- maybe I need to

20  cut to the case here.  Will you at least admit that the

21  students who have a contract with Fairleigh Dickinson

22  -- which was they paid money and you were to provide

23  educational services.  I understand that you say that

24  you have fulfilled the contract but they did have a

25  contract; is that correct?

1          MR. STIO:  They had a contract to receive or

2     earn the ability to receive credits, yes, -- to get an

3     education.

4          THE COURT:  Okay, that's true too.  And, now

5     in any contract there may be expressed terms but then

6     the law also says there's implied terms in order to

7     fulfill the purpose of the contract.  And, that's

8     standard contract law and a standard jury charge we

9     have here in New Jersey.  So, it -- it is a contract

10    and then the contract may have implied terms in

11    addition to expressed terms.

12         And, then there is also an implied term of

13    the covenant of good faith and fair dealing in our

14    contract.  I understand that your adversaries have also

15    added a lot of other torts and things that may not

16    survive a Motion for Summary Judgment.  But, we'll go

17    back to that there is a contract and now with regard to

18    the contract that these students had, besides earning

19    credits, there were other things that they contracted

20    for that could no longer be provided.

21         While you were providing the education, they

22    may have lost their student activity fees that people

23    who took online courses didn't and you did not refund

24    those.  Or they may have had parking fees or a myriad

25    of other things that only those students that were on

 1    campus would normally have.  But, since they were no

 2    longer on campus, they were deprived of the fruits of

 3    that.  Weren't they entitled to a refund of those kind

 4    of things?

 5              MR. STIO:  So, Your Honor, yes.  They

 6    received a refund for -- they received a refund of

 7    board.  They received a refund of room.  They received

 8    a refund of parking.  FDU continued to offer services

 9    virtually.  And, they only identify two fees in their

10    complaint that they claim were mandatory fees that

11    weren't refunded -- a technology fee which ironically

12    when you're taking classes virtually, it is off

13    technology, and a wellness fee and we point it out in

14    our reply brief that FDU has wellness applications and

15    continued to offer counseling and wellness services

16    remotely.

17              And, we cite to the same website that they

18    have relied upon in their complaint for their

19    allegations.  So, they can't say you didn't provide a

20    service.  Their whole claim, Your Honor, is well the

21    service you provided was subpar.  And, that gets into

22    education malpractice because New Jersey law makes

23    clear that if the Court is required to judge the

24    quality of education, that's education malpractice and

25    it's barred.

1          And, this isn't a case where they didn't

2    receive a service.  They're asking this Court to say

3    look at what in person instruction is, look at what

4    virtual instruction is, and you, Court, need to make a

5    quality determination as to what damages exist.  That's

6    not permissible under New Jersey law.

7          I also just want to point out, Your Honor,

8    that with all due respect an implied contractual

9    (indiscernible) that the Court has cited is a little

10   different in the college and university context.  And,

11   I would direct the Court's attention to our brief on

12   page 21 and our reply brief at four, in particular,

13   Mitra (phonetic), Cruz, and Barker cases.

14         In addition, there's the (indiscernible) case

15   that said, yes, there is a quasi-contractual clause of

16   action for breach of a policy or provision in a

17   handbook.  But, the University needs flexibility and

18   the inquiry there is on whether there's bad faith.

19   There is not a single allegation in this complaint of

20   bad faith.

21         In fact, the plaintiff's concede that FDU had

22   no other alternative but to continue the semester with

23   virtual education.  And, I would add Your Honor that

24   one of the plaintiff's, Ms. Ceana Cuello, actually

25   graduated on time and did not have her education

1    delayed.

2            And, I would submit to the Court that if FDU

3    shut down everything, we would be here with Ms. Cuello

4    filing a complaint saying you delayed my education, I

5    was delayed getting into the work force and I'm

6    entitled to damages.

7            So, the other thing I want to point out, Your

8    Honor, is yes there can be implied provision, but

9    implied provisions and the breach of duty of good faith

10   and fair dealings under New Jersey law, again, they

11   cannot replace expressed provisions.

12           And, there cannot be a contract here because

13   there is two very explicit reservation of rights

14   provisions that unquestionably give FDU the right to

15   change courses, to change schedules, to change the mode

16   of instruction, and provide reasonable alternatives.

17           That's what happened here.  We had a once in

18   a lifetime global pandemic.  It's the unexpected.  It's

19   the reason this reservation of rights provision is in

20   the course catalog and the student handbook.  FDU had

21   every right to do this in order to fulfill its

22   charitable educational purpose, which is continue to

23   provide an education to students.

24           And, I would submit to the Court that there

25   is no breach of contract because of that expressed

1    language in both the handbook and the student catalog

2    that gives FDU every right to do what it did here.

3    Under the circumstances, it continued to provide an

4    education.  It continued to provide educational support

5    services, albeit virtually.

6          This is not a case where nothing was provided

7    and FDU took the tuition and fees.  Quite to the

8    contrary, FDU had to expend significant sums -- sums of

9    money to transition almost instantly from in person

10   instruction to virtual instruction to allow its

11   students to have and continue their education unabated.

12         I would submit that that is what the Court

13   should rely upon for the breach of contract.  Under the

14   unjust enrichment claim, Your Honor, I would point out

15   that the unjust enrichment claim is based on the same

16   promise of in person instruction.  And, if the contract

17   claim fails, the unjust enrichment claim fails.

18         But, separately, if the Court believes there

19   is a contract, there is no unjust enrichment claim.

20   The conversion claim here fails because -- for two

21   reasons.  One, Your Honor, is that you cannot have

22   conversion and turn a contract into a tort claim.  But,

23   two, you cannot have a conversion claim when there's

24   not a specific identifiable corpus.

25         There was never intention for a refund here.

1    The intention was you're going to pay money, it's going

2    to be put into the (indiscernible) for the charitable

3    purpose and we're going to provide an education.  The

4    law says you cannot have a conversion claim under those

5    circumstances and I would direct the Court to, again,

6    the Fordham case that came out last week in support of

7    that.

8           And, then finally, money had and received

9    under New Jersey law, we cited in our brief, is no

10   different than an unjust enrichment claim.  There's

11   nothing unjust here about a university fulfilling its

12   charitable purpose, using the tuition to provide an

13   education.  This isn't a situation where Mr. Doval's

14   son or Ms. Cuello did not receive the credits that they

15   had the classes for.

16          THE COURT:  Thank you very much.

17          MR. STIO:  I'm happy to answer any questions.

18          THE COURT:  No -- no, I -- I want to hear

19   from your adversary.  Can I have your appearance?

20          MR. FRAIETTA:  Yes, Your Honor, this is Phil

21   Fraietta for the plaintiff's.  Good morning. I'd like

22   to --

23          THE COURT:  Good morning, Mr. Fraietta.  Good

24   morning, Mr. Fraietta.  Well, before you do what you

25   want to do, I think you better focus in on contracts

1   because basically your conversion and your unjust

2   enrichment would probably fail if you're maintaining

3   that there was a contract which I believe you are.

4   And, then you don't have a quasi-contract.  You have a

5   contract.

6           Now, with a contract, if you look at any of

7   our standard New Jersey jury charges, you're going to

8   find out that there's an -- that implied terms can be

9   made by a jury even to an expressed contract.  And, I

10  don't believe there's an integration clause.  And,

11  additionally, you're going to find that there is a

12  covenant of good faith which is an implied contract.

13          You might even be able to get a separate

14  cause of action for that, but I don't think you pled it

15  that way.  But, if you want to try to go with the hard

16  counts that's -- that's fine.  And, additionally, I did

17  read in your brief something to the effect that, while,

18  I don't think you're looking for an entire refund, you

19  are looking for some contract damages.

20          And, that -- in your brief, you say

21  furthermore, plaintiff's were assessed several fees in

22  addition to their tuition that were paid in exchange

23  for support of their in person, on campus education.

24  These fees, which included the $924 technology fee and

25  $140 university wellness fee were significantly higher

1    than corresponding fees that were assessed to students

2    who signed up for FDU's online only program.

3         So, you do -- and I think your adversary

4    admits that there is a contract and then you do cite

5    that there are some damages.  And, you do state that as

6    such there was a breach of contract and therefore the

7    motion should be denied.  But, now you can tell me what

8    you actually do state.

9         MR. FRAIETTA:  Yes, and thank you, Judge,

10   I'll certainly take that guidance and -- and we agree

11   with you, we believe that this is, first and foremost,

12   a breach of contract case.  So, what I'd like to do is

13   I'd like to start by explaining what this case is and

14   what it isn't.

15        So, Mr. Stio laid out a different case than

16   the plaintiff's have pled.  We are not challenging

17   FDU's response to COVID-19.  This is not a COVID-19

18   litigation.  We're not challenging Governor Murphy's

19   executive orders.

20        What we are challenging was FDU's decision to

21   keep the tuition and fees despite moving the courses

22   online and in doing so, breaching their contract.  So,

23   the example that I like to give, Judge, is if I paid a

24   painter to come and paint my house and the house blew

25   down between the time that I paid and the time that he

1      came to paint it, he can't keep the money.

2              That's just black letter contract law that he

3      would need to refund the money.  And, that's not what

4      happened here.  So, -- so I think that's important

5      because it goes to the educational malpractice claim

6      and this is --

7              THE COURT:  Well, you may -- you may want to

8      talk about contract law.  And, what the defendant's are

9      basically saying is that you had a contract.  Your

10     contract was to obtain education and credits and they

11     fulfilled that.  There was a modification of how they

12     filled that but there was a supervening cause that

13     required them to make the modification.

14              But, yet they still filled the essential

15     elements of what you contracted for.  And, as such,

16     you're not entitled to a refund since you did get the

17     education course and you did get the credits that you

18     had contracted for.

19              MR. FRAIETTA:  Understood.  And, where -- we

20     think that defense fails for a few reasons.  But, the

21     gist of the reason is that that defense assumes that

22     the contract was simply for education.  And, I think

23     the complaint makes clear that that's not the case.

24     So, for instance, Your Honor, at paragraph 36 of the

25     complaint, we discuss FDU's online program.

1          So, they offer a program for students who do

2     want to take courses online just for the benefit of

3     receiving credits.  And, that program is offered at a

4     program of 50 percent less than a standard FDU tuition.

5     So, -- so we think that that fact alone emphasizes that

6     there is some sort of a price premium affiliated with

7     in person education and a promise that if you're not in

8     our online program, you're in our in person program.

9          Additionally, paragraph 33 of the complaint,

10    we cite FDU's discussion of its campus and how its

11    campus provides you with "the classic college

12    experience."  And, the University boasts its

13    fraternities, its sororities, its student activities,

14    its intramural and collegiate athletic programs,

15    etcetera, etcetera.

16         These are all part of what the plaintiff's

17    contracted for at the beginning of the Spring 2020

18    semester.  So, I -- I think it would be disingenuous of

19    FDU to suggest that well all of that is just extra

20    fluff.  The only thing they really contracted for is

21    credits.  And, again, the fact that they offer an

22    online program that offers just credits cuts against

23    their argument.

24         I also would like to point out, Your Honor,

25    that Mr. Stio mentioned the Fordham case and that's a

1    big distinguishing factor of the Fordham case.  Fordham

2    University does not offer a distinct online program.

3    And, Judge Wood, in her opinion, noted that.

4         So, we believe that there is a contract here

5    and a contractual promise to provide the in person

6    educational experience.  That was denied to the

7    students and therefore it's a breach and with a breach

8    of contract, you're entitled to a refund.

9    Additionally, Mr. Stio argued that there's a

10   reservation of rights clause and the reservation of

11   rights clause in his mind -- words, to paraphrase,

12   gives the University the right to do whatever it wants,

13   essentially.

14        And, that's just not true under New Jersey

15   law.  So, this is at pages 17 and 18 of our brief.

16   But, to quote the Court in the case of Bain versus

17   Union City College, that's 2018 Westlaw 566, 207,

18   District of New Jersey, in 2018, that Court said that

19   the language that sums to subject to change does not

20   constitute a specific sufficient disclaimer.  And,

21   that's because, like in all contract law, ambiguous

22   clauses are interpreted against the drafter.

23        So, here FDU's reservation of rights clause

24   reads that the University reserves the right to change

25   without notice the contents of its bulletins and to

1    modify its academic calendars and programs of

2    instructions, etcetera, etcetera.  That -- it doesn't

3    say the University has the right to switch to online

4    courses midway through the semester.

5         So, a reasonable student reading that

6    provision would understand it and our clients did

7    understand it to mean the University could say, for

8    instance, to receive an economic degree you need to

9    take an additional statistics course from when you

10   originally enrolled.  We've -- we've -- the economics

11   department has decided that that too is now required --

12   that kind of thing.

13        Or math -- calculus 101 is going to be taught

14   in lecture hall two instead of lecture hall one.  It

15   doesn't allow them to change the entire nature of the

16   contract and that's what they did here.

17        And, one of the cases we cite from a Michigan

18   state Court points out that reading the clause a

19   defendant -- as broad as a defendant would like to,

20   could lead to the absurd conclusion that the defendant

21   could offer classes for a day and then cancel the rest

22   of the semester and keep the money because they reserve

23   the right to change it so we decided that you only need

24   to take one class to graduate instead of the entire

25   semester.

1              It's clearly -- it cannot be the case, Your

2      Honor.  So, we just think that the reservation of

3      rights defense fails.  It's also premature for the

4      reasons that I got into.  It requires an understanding.

5      And, Your Honor mentioned this with New Jersey contract

6      law, that jurors can find implied terms in the

7      contract.

8              So, I -- I don't quite understand how we can

9      determine as a matter of law on the pleadings alone

10     that there was no promise for in person education here.

11     So, to move on then to the educational malpractice

12     defense where I was headed earlier, the --

13             THE COURT:  You said -- you said you really

14     weren't ever pleading that -- anything about a

15     sub-standard education, you were pleading about that --

16     they literally didn't get their in person education,

17     they got an online education, and that's not what they

18     contracted for so they should, at the very least, be

19     charged what an online course goes for, not what an in

20     person class goes for.

21             MR. FRAIETTA:  Correct, and that's why the

22     overwhelming weight of authority concludes that these

23     claims are not grounded on educational malpractice.

24     And, that's in Court's all across and we cited that in

25     our papers.  There are, by my count, at least 15

1    decisions that we cited that come to that conclusion.

2         So, moving on to the fees, Mr. Stio mentioned

3    two mandatory fees, the technology fee and the wellness

4    fee -- and, again, Judge --

5         THE COURT:  I think you actually mentioned --

6    I mentioned it because I quoted it from your brief from

7    page 15 at the bottom.

8         MR. FRAIETTA:  Yes, and Mr. Stio argued that

9    the technology fee was clearly needed to put the

10   courses to Zoom and the wellness fee was still offered

11   for students to, I guess, remote counseling and things

12   of that sort.  And, again, understood and point noted,

13   however as we plead and write in the brief, those fees

14   are not assessed to students who sign up for online

15   programs.

16        So, there is a difference between the

17   technology fee and the wellness fee for the in person

18   students versus the online students.  And, -- and

19   essentially, as Your Honor just summarized our case, if

20   the semester was going to be conducted online or if

21   half of the semester was going to be conducted online,

22   we want to be charged like the online students would

23   have been charged for that half of the semester, which

24   is approximately 50 percent less based on FDU's --

25        THE COURT:  So, you're not saying -- you are

1      not claiming that, in fact, that you should be entitled

2      to a full refund of everything paid because you did

3      have the benefit of their online -- your student --

4      your clients did participate and so you're not --

5      you're not in any way saying you're entitled to a full

6      refund because the pandemic required the steps that

7      Fairleigh Dickinson took.  But, that you say that you

8      should just get what the benefit of the bargain is for

9      people who take the online as opposed to the people who

10     were no longer able to go in on campus?

11            MR. FRAIETTA:  Correct, Your Honor, exactly.

12     And, that -- that's the right term for it.  It's the

13     benefit of the bargain.  It's simple contract damages

14     that any first year law student learns.  And -- but the

15     Court in the Rosado (phonetic) case which is cited in

16     our brief -- the name of the defendant escapes me but

17     it's a different university, in that case the Court

18     draws an analogy that I think is appropriate.

19            If I buy -- contract for a Cadillac but

20     receive, an Oldsmobile, well the Oldsmobile still

21     drives, it gets me from point A to point B, but the

22     market price of the Oldsmobile is clearly less than the

23     Cadillac and therefore I get the benefit of the bargain

24     in the contract suit.

25            THE COURT:  You're -- you're rather old

1    aren't you?  First of all, they haven't made

2    Oldsmobile's in a long, long time and you know maybe

3    somebody like myself, who is even probably older than

4    you are, remembers Cadillac's and Oldsmobile's.  They

5    usually had the same engine and they were certainly

6    made by the same overall manufacturer, but I get the

7    analogy.  Anything else -- anything else?

8                MR. FRAIETTA:  I -- I'm old enough to

9    remember the Oldsmobile to be honest with you, Your

10   Honor, but I'm just quoting the Court in the Rosado

11   case.  But, no there's not much else to --

12               THE COURT:  Unfortunately -- unfortunately,

13   it was my first car.

14               MR. FRAIETTA:  I hope -- I hope you enjoyed

15   it, Your Honor, but --

16               THE COURT:  I did -- I thought it was grand.

17               MR. FRAIETTA:  But, no there isn't much else

18   to --

19               THE COURT:  And, glorious.  Is there anything

20   else I need to know about the motion was to why it

21   should be denied?

22               MR. FRAIETTA:  I don't think so, Your Honor.

23   To briefly summarize, to us, it's a -- this is a simple

24   breach of contract case and the -- the fact that the

25   defendant is a university does not change black letter

1    contract law.  If -- if I may, I would like to be heard

2    on the quasi-contract claim.  I understand that Your

3    Honor knows --

4              THE COURT:  Well you know I've already seen

5    this happen where a Judge actually charged

6    quasi-contract and had a breach of contract case and

7    the Appellate Division took umbrage with that Judge.

8    Thankfully, it wasn't me.  But, I'm not sure how you're

9    going to get unjust enrichment if you're pleading

10   contract and contract damages.  But, we'll -- we may

11   leave that to another day if I deny the motion to see

12   how you fair in discovery.  I know you --

13             MR. FRAIETTA:  That's what I was going to

14   say, Your Honor -- we're brining those claims --

15             THE COURT:  And, I know that's what you --

16   that you did it as an alternate pleading.

17             MR. FRAIETTA:  Correct.

18             THE COURT:  I'm not even sure how you're ever

19   going to get to conversion as a tort which usually

20   involves (indiscernible) as your adversary had pointed

21   out.  But, that's why I wanted you to argue about

22   contract law because if you were going to go with

23   anything that seemed to be the best cause of action.

24             MR. FRAIETTA:  Noted and agreed, but for the

25   purposes of the record, I just wanted to state that we

1    do bring the quasi-contract claims including unjust

2    enrichment and the alternative.  And, at this stage in

3    litigation we believe that they can proceed in the

4    alternative until the summary judgment stage where --

5    as Your Honor indicated, if the contract is proven that

6    may be different.  But, at this stage, we believe they

7    can proceed in the alternative.

8              THE COURT:  Very good.  I'd like to hear back

9    from Fairleigh Dickinson so I believe I will recognize

10   Counsel for Fairleigh Dickinson.

11             MR. STIO:  Thank you, Your Honor.  Your

12   Honor, I want to point out -- I'll start with the

13   implied contract.  I would direct the Court --

14             THE COURT:  Could you -- could you -- could

15   you do me a favor, for the record?  Could you start

16   with your name?

17             MR. STIO:  Yes, Your Honor --

18             THE COURT:  Could you start with your name?

19             MR. STIO:  Yes, sure Your Honor.  My

20   apologies.  Angelo Stio from Troutman Pepper Hamilton,

21   Your Honor.

22             THE COURT:  Thank you.

23             MR. STIO:  Your Honor, I'll start with the

24   implied contract principles.  I -- I understand the

25   Court's position, but I would direct the Court to read

24

1    the decisions in <u>Mitra</u>, <u>Cruz</u>, <u>Romero</u>, and the <u>Berry</u>

2    (phonetic) case which was decided on a Motion to

3    Dismiss and affirmed by the Appellate Division which

4    all said that applied contractual principles do not

5    apply in the student university context.

6            New Jersey law is unique on that.  And, what

7    plaintiff's are trying to do is cherry pick provisions

8    that they like and then require the University to have

9    rightful precision with expressed provisions from the

10   same document they rely upon.  And, the <u>Berry</u> Court on

11   a Motion to Dismiss said you can't do that.

12           If there's an implied contract here, it

13   included the reservation of rights provision and the

14   reservation of rights provision gives the University

15   the opportunity to do exactly what it has done here.

16   That's the case we have.

17           Second, the plaintiff's have said, well they

18   charge less for online courses.  What the plaintiff

19   doesn't tell you and what we cited in our brief and we

20   even gave you the website address, which they rely upon

21   for their allegations, so the Court can consider it, we

22   don't offer degrees in nursing and we don't offer the

23   courses in political science that Mr. Doval's son has

24   taken and the nursing courses that Ms. Cuello took

25   online.

1          There is a small universe of classes that are

2     online and none of the classes here are online.  So, to

3     say well we can charge the same amount and you can get

4     the damages, doesn't work because they couldn't take

5     any of these courses online when they registered.  They

6     couldn't have any of these full-time faculty teaching

7     the courses online when they registered.

8          What they're asking you to do, Judge, is to

9     go in and look at the quality of what they received.

10    And, Court's, time and time again, have said if it

11    involves quality, you cannot have a contract or even a

12    tort claim because it is education malpractice.

13         I also want to draw the Court's attention --

14    my adversary said well there's all of these promises in

15    the University publications about the campus life and

16    how expectations are on campus.  Footnote one in our

17    reply brief lists specific cases in the university

18    context where the Court's have said, you cannot have an

19    enforceable promise arise from indefinite statements

20    about campus life.

21         That's what they are trying to put here as a

22    contract.  And, Your Honor, there may be a contract,

23    but there is not an expressed agreement here.  They

24    have not come forward with any written document that

25    says you get this in exchange for X.

1          They're saying there's an implied agreement.

2     That implied agreement is that you have to provide in

3     person instruction under every circumstance and you

4     have to live by the letter of the course catalog.

5          In short, you disregard and you don't have to

6     even consider expressed languages.  It says the

7     University can change it because they have to be

8     specific in their expressed language but we could tell

9     you what the implied language is and you have to accept

10    it.  That doesn't make any sense.  That doesn't follow

11    New Jersey law.

12         And, I think that it's going to set a

13    horrible precedent if Court's are going to allow

14    students to come in and say, well I was supposed to

15    have a course in the new academic building, there was a

16    flood, it got changed to the old academic building and

17    because of the lighting and the air conditioning, I

18    wasn't able to get an education.

19         Universities which are non-profits would die

20    a slow death of a thousand cuts.  They can't do that.

21    And, that's why the Berry case says, you need to look

22    at whether the university acted in good faith.  Mr.

23    Fraietta admitted in his oral argument no one says the

24    University acted in bad faith.  That submission is

25    fatal for the breach of contract claim.

1    They don't have a breach of contract claim

2  because what we did was authorize, under the expressed

3  reservation of rights provision, from the same

4  documents they want this Court to imply promises, and

5  you can't do that.  I'll be happy to answer any

6  questions the Court has.

7    THE COURT:  No, thank you.  I'll hear your

8  adversary in rebuttal.

9    MR. FRAIETTA:  Thank you, Your Honor.  I'd

10  like to respond to at least two of the points that Mr.

11  Stio --

12    THE COURT:  Can I have your appearance then

13  for the record?

14    MR. FRAIETTA:  Yeah, I apologize, this is Mr.

15  Fraietta for the plaintiff.

16    THE COURT:  Thank you, Mr. Fraietta.  You may

17  proceed.

18    MR. FRAIETTA:  I'd like to respond to two of

19  the points that my adversary laid out there.  The first

20  is on damages.  So, as an initial matter, we don't need

21  to prove damages at the pleadings stage.  We only need

22  to show the existence of them.  We don't need to state

23  the amount certain under New Jersey law.

24    But, nonetheless, the argument that the

25  damages inquiry is going to require a look into the

1    quality of the education is simply not true.  And, this

2    is recognized by the Court in the matter of Bergeron

3    versus RIT which we submitted as supplemental authority

4    to the Court yesterday, I believe.  And, it's a recent

5    decision that came out after our opposition brief was

6    filed.

7         But, in Bergeron, the Court notes and Counsel

8    explains that damages in a case like this can be

9    determined at the appropriate time by experts to simply

10   determine what is the difference between the online

11   price and the in person price.  And, in this particular

12   case, it's easy because FDU gives us that difference.

13   They give us the difference of online school versus in

14   person school.

15        So, I -- this is a simple market analysis.

16   It's how much would the reasonable consumer have paid

17   had the reasonable consumer known the semester was

18   going to be half online.  That does not require the

19   Court to look into the quality of the damages.  That's

20   accepted by Bergeron and we would urge Your Honor to

21   agree with that decision.

22        As a secondary matter, Mr. Stio mentioned the

23   -- what I guess is the domino effect, so to speak, of

24   if Your Honor were to deny this motion that students

25   would run in and sue their university for every little

1   change, but I think that's misstating what happened

2   here.  This is not a situation where FDU changed the

3   chemistry class from lab number one to lab number two.

4           This is a situation where FDU changed the

5   entire nature of the academic program.  Instead of an

6   in person experience on its campus -- on its beautiful

7   campus I should say, it was relegated to the internet

8   on Zoom in their parents basement.  It's -- it's just a

9   completely different animal than what was bargained for

10  and we think it's -- it's a distinguishable fact for

11  that matter.

12          The educational malpractice doctrine and the

13  requirement of bad faith, as Mr. Stio says, has merit

14  in some instances.  I would agree that the state of New

15  Jersey doesn't want a student to say, hey, you know I

16  thought that my history professor just -- he had a bad

17  week so I'd like a little bit of money back, he wasn't

18  really all with it.  But, that's not what this case is.

19          This case is about changing the whole major.

20  And, to conclude on the bad faith prong, I just want to

21  clarify, our position is not that FDU did not act in

22  bad faith.  We don't think FDU acted in bad faith by

23  transitioning to online education as was required by

24  Governor Murphy's order.  We think they acted in bad

25  faith by keeping the money.

1          Governor Murphy did not order the University

2     to keep the money.  They -- they very easily could have

3     and should have refunded the tuition and that's

4     recognized by their decision to refund room and board

5     as Mr. Stio mentioned earlier which (indiscernible)

6     completely arbitrary decision -- why you would refund

7     one and not the other.

8          So, we do challenge that.  Even if a bad

9     faith standard was required, and I don't think it is

10    for the reasons stated in our brief, but even if it

11    was, there is a bad faith decision here, and it's to

12    keep the tuition money despite not delivering what was

13    promised.  And, with that, I'm happy to answer any

14    questions.

15          THE COURT:  No, the Court has before it a

16    Motion to Dismiss the plaintiff's complaint.  And,

17    again, with regard to this, there -- there is a

18    contract.  I think both parties agree that there is a

19    contract.

20          But, the Court is also mindful that our law

21    requires that when the contract terms are ambiguous or

22    the parties dispute their meaning, construction of the

23    contract and the application of any evidence submitted

24    to prove the surrounding circumstances, are for a jury.

25    And, that would be State Farm Mutual Auto Insurance

1      Company.

2                Additionally, we know that with regard to

3      contracts, we have to have a jury determine what the

4      loss was and what the contract damages are.  We do know

5      that there was a modification and the question then

6      becomes -- and, again, it is a claim of breach, whether

7      the essential terms of the contract were fulfilled by

8      the University or whether there was, in fact, a

9      meaningful breach that robbed the plaintiff of a

10     substantial part of the bargain.

11               On the other hand, the defendant is arguing

12     that the defendant substantially performed the contract

13     and as such made a good faith effort that actually

14     achieved the essential purpose of the contract and

15     provided the plaintiff with the fundamental benefits

16     that the plaintiff was supposed to receive from the

17     contract.

18               All of this brings us back down to a Motion

19     to Dismiss.  Under New Jersey Court Rules a complaint

20     may only be dismissed for failure to state a claim and

21     after an in-depth and liberal search of its allegation

22     a cause of action cannot be gleaned even from an

23     obscure statement in the complaint, particularly if

24     additional discovery is permitted.  See New Jersey

25     Court Rule 4:6-2E as citing Printing Mart versus Sharp

1    Electronics, 116 N.J. 739,746 (1989).

2            Thus, the Court must give the non-moving

3    party every inference in evaluating whether to dismiss

4    a complaint.  The test for determining the adequacy of

5    a pleading is whether a cause of action is suggested by

6    the fact, back to Printing Mart.  Now, there are some

7    additional causes of action in here which I believe

8    will eventually have to be dismissed upon the

9    completion of discovery.

10            But, they are all entwined with the same

11    factual scenario, that is, the contract claim that the

12    plaintiff has brought.  As such, the Court is going to

13    be denying the Motion to Dismiss at this juncture,

14    pending the completion of discovery, and then it would

15    be more appropriate as a Motion for Summary Judgment.

16    And, that is the decision of the Court for the reasons

17    stated on the record.  All be well and have a good

18    afternoon.

19            (Proceeding concluded at 12:27:24 p.m.)

20

21

22

23

24

25

33

1

CERTIFICATION

I, Hollie Bennett, the assigned transcriber, do hereby certify the foregoing transcript of proceedings on CourtSmart, Index No. from 11:47:43 to 12:27:24, is prepared to the best of my ability and in full compliance with the current Transcript Format for Judicial Proceedings and is a true and accurate non-compressed transcript of the proceedings, as recorded.


_/s/ Hollie Bennett_            AD/T 695
Hollie Bennett                 AOC Number


Phoenix Transcription LLC      02/09/21
Agency Name                    Date