NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| LEAH MITELBERG, *individually and on behalf of all others similarly situated*,<br><br>Plaintiff,<br><br>v.<br><br>STEVENS INSTITUTE OF TECHNOLOGY,<br><br>Defendant. | Civil Action No. 21-1043 (SDW) (MAH)<br><br>**OPINION**<br><br>May 25, 2021 |

**WIGENTON,** District Judge.

Before this Court is Defendant Stevens Institute of Technology's ("Defendant") Motion to Dismiss Plaintiff Leah Mitelberg's ("Plaintiff") Class Action Complaint pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6). This Court has jurisdiction pursuant to 28 U.S.C. § 1332(d). Venue is proper pursuant to 28 U.S.C. § 1391(b). This Court, having considered the parties' submissions, decides this matter without oral argument pursuant to Rule 78. For the reasons stated below, Defendant's Motion is **GRANTED in Part** and **DENIED in Part**.

I.     BACKGROUND AND PROCEDURAL HISTORY

This class action is one of many similar cases throughout the United States ("U.S.") involving a monetary dispute over the transition to virtual higher education during the COVID-19 pandemic.[1] Plaintiff was enrolled as an undergraduate in the cyber security program at Stevens Institute of Technology in Hoboken, New Jersey, when COVID-19 swept across the U.S. in early

---

[1] *See* Anjelica Cappellino, More Than 70 Universities Sued for Refunds Following COVID-19 Campus Closures, Expert Institute (June 25, 2020), https://www.expertinstitute.com/resources/insights/universities-sued-for-covid-19-refunds-following-campus-closures/.

2020. (D.E. 1 ¶¶ 1, 18.) As a result, Defendant switched to remote learning on March 11, 2020, which continued through the end of the Spring Semester. (*Id.* ¶¶ 12, 31–32.) Plaintiff's coursework in cyber security purportedly entails extensive in-person instruction, student presentations, peer collaboration, and access to university facilities such as laboratories. (*Id.* ¶ 18.) Accordingly, Plaintiff maintains that Defendant's virtual instruction was "subpar" because it deprived students of (i) collaborative and hands-on learning, (ii) in-person dialogue, feedback, critique, networking, and mentorship, (iii) access to materials and facilities such as laboratories, libraries, and study rooms, (iv) participation in extra-curricular activities, sports, and clubs, and (v) opportunities for social development and independence. (*Id.* ¶¶ 13, 37–38.)

Although Defendant partially refunded students' housing costs following the suspension of in-person instruction, it did not refund Plaintiff any portion of her Spring Semester tuition (approximately $31,671)[2] or fees comprised of a General Services Fee ($710) and a Student Activity Fee ($230). (*Id.* ¶¶ 18, 27–28.) Plaintiff contends she contracted with Defendant for in-person instruction and access to services and facilities—specifically by way of Defendant's 2020 Spring Semester Course Catalog, Course Scheduler, Academic Policies, and course syllabi—and intends to recover a prorated portion of tuition and fees for the period in which virtual learning commenced. (*Id.* ¶¶ 39, 51–53.) Plaintiff seeks to represent a class of similarly situated individuals who remitted, but were never refunded, tuition and/or fees to Defendant for the 2020 Spring Semester, as well as a subclass of class members who live in New Jersey. (*Id.* ¶¶ 40–41.)

After this Court dismissed a nearly identical case brought by Plaintiff's parent for lack of standing, *see Ilya Mitelberg v. Stevens Institute of Technology*, No. 20-5748 (D.N.J. Jan. 22, 2021), ECF No. 35, Plaintiff filed this lawsuit asserting claims for breach of contract (Count I), unjust

---

[2] Although Plaintiff represents that undergraduate tuition for the 2020 Spring Semester was approximately $26,067, she does not explain how her tuition and fees amounted to $31,671. (*Compare* D.E. 1 ¶ 18, *with id.* ¶ 28.)

2

enrichment (Count II), conversion (Count III), and money had and received (Count IV).  (*Id.* ¶¶ 49–88.)  Defendant moved to dismiss the Complaint on March 29, 2021, and all briefs were timely filed.  (D.E. 4, 4-1, 5, 6.)

## II.  LEGAL STANDARD

An adequate complaint must be "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).  This Rule "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.  Factual allegations must be enough to raise a right to relief above the speculative level[.]" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations omitted); *see also Phillips v. Cty. of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008) (stating that Rule 8 "requires a 'showing,' rather than a blanket assertion, of an entitlement to relief").

In considering a motion to dismiss under Rule 12(b)(6), the Court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Phillips*, 515 F.3d at 231 (external citation omitted).  However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see also Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (discussing the Iqbal standard).  Determining whether the allegations in a complaint are "plausible" is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. If the "well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," the complaint should be dismissed for failing to "show[ ] that the pleader is entitled to relief" as

required by Rule 8(a)(2). *Id.*

III. **DISCUSSION**

A. **Count I: Breach of Contract**

As a preliminary matter, this Court must determine the appropriate standard to apply when faced with a breach of contract claim against an educational institution for its failure to render in-person learning. A recent decision in our District involving a nearly identical dispute against another New Jersey-based university provides apt guidance. *See Dougherty v. Drew Univ.*, No. 21-249, 2021 WL 1422935 (D.N.J. Apr. 14, 2021) (McNulty, J.). Ordinarily, under New Jersey law, a breach of contract claim is established by showing: (1) a valid contract; (2) failed performance; and (3) causation between the alleged breach and the claimant's damages. *See Sheet Metal Workers Int'l Ass'n Local Union No. 27, AFL-CIO v. E.P. Donnelly, Inc.*, 737 F.3d 879, 900 (3d Cir. 2013) (citing *Coyle v. Englander's*, 488 A.2d 1083, 1088 (N.J. Super. Ct. App. Div. 1985)). However, New Jersey courts undertake a context-specific approach to breach of contract claims against universities because, typically, deference is afforded to academic institutions so that they can fulfill their educational responsibilities. *Dougherty*, 2021 WL 1422935, at *4–5 (citing *Napolitano v. Trs. of Princeton Univ.*, 453 A.2d 263, 272–73 (N.J. Super. Ct. App. Div. 1982)).

In *Dougherty*, Judge McNulty applied the standard articulated in *Beukas v. Bd. of Trs. of Fairleigh Dickinson Univ*, 605 A.2d 776, 781 (N.J. Super. Ct. L. Div. 1991), *aff'd per curiam*, 605 A.2d 708 (N.J. Super. Ct. App. Div. 1992). *Id.* *Beukas* arose from a university's decision to permanently cease its graduate program in dentistry following state implemented budget cuts. 605 A.2d at 777, 781. Because the core of *Beukas* involved the university's "*administrative* or business judgment," the court crafted a new standard that dissected the legal inquiry from any underlying pedagogical concerns: "Did the university act in good faith and, if so, did it deal fairly with its

4

students?" *Id.* at 781–84. Moreover, *Beukas* refused to equate a course catalog to an express contract, reasoning that catalogs are not perceived, traditionally, as contractual in nature. *Id.* at 782.

In comparing standards utilized by New Jersey courts in actions against universities, Judge McNulty followed *Beukas* chiefly because it provided the most analogous set of facts to the dispute at hand—a broad alteration to an academic program spurred by an uncontrollable event untethered to education itself. *Dougherty*, 2021 WL 1422935, at *4–5. This Court agrees with *Dougherty*'s reasoning and will apply the *Beukas* standard. In doing so, it is appropriate to consider whether Defendant's transition to virtual instruction during the COVID-19 pandemic "was arbitrary, made in bad faith, or lacking in fair notice." *Id.* at *6.

This Court finds that Defendant did not deviate from its responsibility to act in good faith and deal fairly with its students amidst the unprecedented COVID-19 pandemic. *See Dougherty*, 2021 WL 1422935, at *6–7. Indeed, Plaintiff acknowledges that Defendant's transition to virtual learning was in direct response to the COVID-19 pandemic. (*See* D.E. 1 ¶¶ 1, 31.) Defendant, like many other educational institutions, businesses, organizations, and governmental bodies, switched to a virtual format to comply with local, state, and federal guidance aimed at combating the spread of the SARS-CoV-2 virus that causes COVID-19.[3] *See Dougherty*, 2021 WL 1422935, at *6 (citing *Beukas*, 605 A.2d at 782, 784). These reasons, coupled with the absence of allegations that Defendant could have utilized another safe learning option, establish that the physical closure was not only fair, but carried out in good faith for the health and safety of Defendant's students,

---

[3] *See* Christophe Pierre, Online Classes, Remote Working Arrangements, Commencement, and Additional Updates (Mar. 17, 2020), https://www.stevens.edu/directory/student-health-services/health-advisory-update/coronavirus-2019-covid-19-information/advisories-updates/march-2020#031720. Because Plaintiff references many of Defendant's online announcements from March 2020 and cites to its archive of COVID-19 updates in her Complaint, this Court may consider statements contained therein on a motion to dismiss. *See In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997); *N.J. Reg'l Council of Carpenters v. RAC Atl. City Holdings, LLC*, No. 11-03932, 2012 WL 482161, at *2 n.5 (D.N.J. Feb. 14, 2012). For the same reason, this Court may consider any statements that are integral to or are incorporated by reference in the Complaint from Defendant's Course Catalog.

5

faculty, and staff. (*See* D.E. 1 ¶ 33 (noting that Defendant may "not have [had] a choice in cancelling in-person classes").) Accordingly, even if Defendant's alleged breach was unavoidable, it also cannot be liable for "lesser breaches" associated with any perceived monetary difference between the value of in-person learning versus virtual education. *See Dougherty*, 2021 WL 1422935, at *6–7.[4]

Alternatively, assuming Plaintiff alleged a valid contract that promised an in-person education, her breach of contract claim fails under the express reservation of rights ("ROR") provision contained in Defendant's Catalog.[5] Defendant's 2019-2020 Catalog states that it "reserves the right to change the information, regulations, requirements, procedures and policies announced in th[e] catalog including but not limited to: requirements for admission; graduation or degrees; scheduling; credit or content of courses; fees; and calendars." (D.E. 4-13, Ex. I to D.E. 4-4 (Declaration of Angelo Stio ("Stio Decl.")).) Because Defendant expressly retained the right to alter requirements and procedures, its transition to virtual instruction during the 2020 Spring Semester falls within its purview under the ROR. *See, e.g.*, *Beukas*, 605 A.2d at 708–09; *Cruz v. Seton Hall Univ.*, No. 11-1429, 2012 U.S. Dist. LEXIS 96005 at *19 (D.N.J. July 10, 2012). This finding is consistent with other courts' holdings in parallel cases that have addressed universities' ROR clauses. *See, e.g.*, *Dougherty*, 2021 WL 1422935, at *7 (concluding that "broad" language

---

[4] Plaintiff does not meaningfully distinguish any aspect of *Dougherty* from the instant dispute. (*See generally* D.E. 5.) For example, Plaintiff's attempt to contrast the timing of the alleged breach in *Beukas* and this matter furthers the conclusion that Defendant acted in good faith. Even if the university in *Beukas* shutdown the dental program in between semesters, Defendant here faced different, arguably more exigent circumstances mid-semester when COVID-19 began to spread throughout the U.S. (*See* D.E. 5 at 18 n.3; *see also* D.E. 1 ¶ 11.) Furthermore, Plaintiff encourages this Court to ignore *Dougherty*'s fulsome analysis in favor of a state court decision that denied a similar motion to dismiss orally on the record (*see* D.E. 5 at 18 n.3), which, as Judge McNulty appropriately concluded, "is a bare trial court decision with no analysis." *Dougherty*, 2021 WL 1422935, at *5 n.4.

[5] Plaintiff does not dispute that Defendant's "Academic Catalog" is anything other than the "Course Catalog" described in the Complaint. (*See* D.E. 5; *compare* D.E. 1, *with* D.E. 4-13, Ex. I to Stio Decl.) For simplicity, this Court will refer to the document as the "Catalog," and may consider statements contained therein under the incorporation by reference doctrine. *See supra*, note 3.

6

in a ROR "is not necessarily 'ambiguous'" and that while the university's clause was "far-reaching," it captured the switch to virtual instruction in light of COVID-19 "clear[ly] enough").[6] Accordingly, Plaintiff's breach of contract claim is dismissed as it relates to tuition reimbursement.

As it relates to fees, however, Plaintiff's breach of contract claim may proceed. Akin to *Dougherty*, this Court finds that fee-based claims are not subject to the deferential context-specific standards commonly employed by New Jersey courts. *See id.* at *11 (noting that *Beukas*, among other cases, did not discuss claims for university-imposed fees). Unlike Plaintiff's claim for tuition reimbursement, her General Services Fee and Student Activity Fee do not necessarily encompass her education; rather, they plausibly facilitate her access to university facilities and resources.[7] *See id.* (analogizing student's parking fee claim to a gym member seeking reimbursement for dues paid during a fitness facility's pandemic-related closure).

Under traditional breach of contract principles, Plaintiff has plausibly alleged (i) a valid contract for access to general student services and activities, (ii) Defendant breached its contractual obligations by failing to provide access to such services and activities, and (iii) a causal connection between Defendant's breach and Plaintiff's damages. *See, e.g.*, *Sheet Metal Workers*, 737 F.3d at 900. Although Plaintiff does not allege her fee payments were made under a written agreement, this Court may infer the existence of a contract. *See Baer v. Chase*, 392 F.3d 609, 616 (3d Cir.

---

[6] *See Crawford v. Presidents & Directors of Georgetown Coll.*, No. 20-1141, 2021 WL 1840410, at *7 (D.D.C. May 7, 2021) (noting that ROR clauses "put students on notice that their expectations regarding the format of instruction—even *reasonable* expectations—might go unfulfilled"); *Shaffer v. George Washington Univ.*, No. 20-1145, 2021 WL 1124607, at *3 (D.D.C. Mar. 24, 2021); *Burt v. Bd. of Trustees of Univ. of Rhode Island*, No. 20-191, 2021 WL 825398, at *5 (D.R.I. Mar. 4, 2021). Although these cases similarly interpret ROR clauses, they are not binding as to the applicable standard of review in the first instance because each state's approach to disputes between students and academic institutions inevitably varies. *See, e.g.*, *Lindner v. Occidental Coll.*, No. 20-8481, 2020 WL 7350212, at *7–9 (C.D. Cal. Dec. 11, 2020).

[7] At this stage of the litigation, the alleged facts must be viewed in a light most favorable to Plaintiff. To the extent Plaintiff's fee-based claims are not for access to facilities, resources, or the like, discovery may be warranted. For the same reason, this Court does not opine on whether Defendant's ROR potentially applies to Plaintiff's fees at this juncture.

2004). Thus, Defendant's Motion to Dismiss Count I is **GRANTED** with respect to Plaintiff's tuition claim and **DENIED** as it applies to her request for fees. *See, e.g.*, *Burt*, 2021 WL 825398, at *6–7.

### B. Count II: Unjust Enrichment

Next, Plaintiff brings a claim for unjust enrichment. (D.E. 1 ¶¶ 65–72.) "Unjust enrichment is an equitable cause of action that imposes liability when a 'defendant received a benefit' and defendant's 'retention of that benefit without payment would be unjust.'" *Gov't Employees Ins. Co. v. Ningning He*, No. 19-9465, 2019 WL 5558868, at *6 (D.N.J. Oct. 29, 2019) (quoting *VRG Corp. v. GKN Realty Corp.*, 641 A.2d 519, 526 (N.J. 1994)). Unjust enrichment is resorted to when a claimant cannot establish the existence of an express or implied contract. *See Langer v. Cap. One Auto Fin.*, No. 19-3875, 2021 WL 1531143, at *3 (3d Cir. Apr. 19, 2021). For the reasons set forth in *Dougherty*, this Court finds no reason to deviate from *Beukas*' standard as it applies to Plaintiff's unjust enrichment claim for tuition reimbursement. 2021 WL 1422935, at *8–9. Thus, Plaintiff's unjust enrichment claim is dismissed as it pertains to tuition for the reasons stated in Section III.A.

Notwithstanding the above, Count II for fees Plaintiff paid to Defendant survives. In the event a contract between Plaintiff and Defendant does not exist as it relates to the General Services Fee and Student Activity Fee, Plaintiff may pursue unjust enrichment as a quasi-contract theory. Here, Plaintiff plausibly alleges that Defendant received the benefit of her fee payments and that retention of those payments would be unjust because Defendant did not render in-person services or activities from March 11, 2020 through the semester's end. *See id.* at *12; (*see also* D.E. 1 ¶¶ 32, 65–72, 84.) Accordingly, Defendant's Motion to Dismiss Count II for tuition reimbursement is **GRANTED** and the same is **DENIED** with respect to fees.

### C. Count III: Conversion

Plaintiff raises a third count for conversion. (D.E. 1 ¶¶ 73–80.) Conversion is the "'unauthorized' exercise of the right of ownership over goods or personal chattels belonging to another, to the alteration of their condition or the exclusion of an owner's right." *Cole v. Wells Fargo Bank, N.A.*, 790 F. App'x 460, 466–67 (3d Cir. 2019). As in *Dougherty*, Plaintiff alleges that she had "an ownership right to [Defendant's] in-person educational services" which "Defendant intentionally interfered with" when it transitioned to virtual learning. (D.E. 1 ¶¶ 75–76.) In addition, Plaintiff's conversion claim can be interpreted to allege that Defendant unlawfully retained her property in the form of paid tuition. (*Id.* ¶¶ 77–78; *see also* D.E. 5 at 31–32.) For the reasons set forth in Section III.B, this Court applies the *Beukas* standard to Count III. Plaintiff's conversion claim for tuition is dismissed, however, because Count III merely restates her claim for breach of contract. *See Dougherty*, 2021 WL 1422935, at *9–10.[8] Accordingly, Defendant's Motion to Dismiss Count III is **GRANTED**.

### D. Count IV: Money Had and Received

Lastly, Plaintiff lodges a claim for money had and received. (D.E. 1 ¶¶ 81–88.) Because the elements to establish a claim for money had and received mirror unjust enrichment, Count IV is dismissed in its entirety for the same reasons articulated in Section III.B. *See, e.g.*, *K-Power Glob. Logistics, LLC v. Poof-Alex Holdings, LLC*, No. 20-3432, 2021 WL 1712331, at *7 (D.N.J. Apr. 30, 2021) (construing a claim for money had and received as duplicative of a claim for unjust

---

[8] Even under a traditional conversion analysis, Count III fails because neither in-person education nor tuition/fee reimbursement fall under the definition of "chattel" that the tort of conversion covers. *Dougherty*, 2021 WL 1422935, at *9 (explaining that "chattel," defined as "[m]ovable or transferable property" such as "a physical object capable of manual delivery" does not encompass an intangible education) (noting that while money itself can form the basis of a conversion claim, plaintiff's request for reimbursement of money *already* paid for subjectively less valuable services is "no different from the contract claim"). Thus, unlike Counts I and II, Plaintiff's fee-based conversion claim similarly must fail. *See id.* at *12.

9

enrichment) (collecting cases).[9]  Thus, Defendant's Motion to Dismiss Count IV is **GRANTED**.

IV.     **CONCLUSION**

For the reasons set forth above, Defendant's Motion to Dismiss is **GRANTED in Part** and **DENIED in Part**.  An appropriate order follows.

/s/ Susan D. Wigenton
**SUSAN D. WIGENTON, U.S.D.J.**

Orig:     Clerk
cc:       Michael A. Hammer, U.S.M.J.
          Parties

---

[9] Although Plaintiff may maintain an unjust enrichment claim for fee reimbursement, Count IV, as it relates to fees, is duplicative of Count II and thus subject to dismissal.  *See Dougherty*, 2021 WL 1422935, at *12.